[Crim. No. 19579. Second Dist., Div. Five. Sept. 28, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN AUGUST GOODMAN, Defendant and Appellant.

## COUNSEL

Cossack & Karp and Roger L. Cossack for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Beverly K. Falk, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**—Defendant was charged in count I of the information with sale of marijuana (Health & Saf. Code, § 11531) and in count II with possession of marijuana for sale (Health & Saf. Code, § 11530.5). Defendant's motion under section 995 of the Penal Code was granted as to count II, and that count was dismissed. Defendant pleaded not guilty to count I. His motion to dismiss for failure to comply with the mandate of *Eleazer* v. *Superior Court,* 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42], was denied. Defendant waived jury trial. The cause was duly submitted on the transcript of the preliminary hearing in accordance with the requirements of *In re Mosley,* 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473]. The court found defendant guilty on count I. Proceedings were suspended. Defendant was placed on three years' probation. He appeals.

On May 1, 1970, Sergeant Urista of the Los Angeles Police Department was told by an informant named Phil Staab that Staab had been defendant's roommate at La Mancha Hall just off the U.C.L.A. campus for about one

month, and that he had seen defendant make sales of marijuana and dangerous drugs. This was the first contact Urista had ever had with Staab, and it was initiated by Staab. On the basis of this information Richard Haro, an undercover police officer, accompanied Staab to defendant's room where the sale which forms the basis for the present charge was consummated between Haro and defendant in Staab's presence. Approximately 10 minutes after the completion of this transaction defendant was arrested by Haro and Urista.

Several hours after the arrest, Urista paid Staab $65 for the information he had provided. Urista was cognizant of the requirements imposed upon police officers by *Eleazer* v. *Superior Court, supra,* 1 Cal.3d 847. He therefore told Staab that it was important that he know Staab's address or how he could contact him. Staab stated that since ceasing to room with defendant a day or so earlier, he had no permanent residence; he did not know where he would be staying; he slept with whoever would put him up for a few days. Urista also asked Staab if he was employed. Staab said that he was not, that he obtained spending money by hustling in bars and pool halls.

Urista reiterated that it was important that he be able to contact Staab in the event Staab was needed as a witness. Staab told the officer that he would keep in touch. Urista told Staab to call every so often to let Urista know where he was staying or how he could be reached.

During May and June 1970 Staab contacted Urista three times. Each time Urista asked him for his address or a place he could be reached. At the time of the first contact Staab stated that he was living with a girl in the valley, but he refused to give the officer her name or address. At the time of the second and third contacts, Staab stated that he was living with a girl in Weyburn Hall at U.C.L.A. Staab refused to give her name or room number. Staab told Urista he would contact him again.

At the end of June Urista went on military leave. He returned four days before trial. At that time Urista contacted Officer Ballante, who was present at the time of defendant's arrest, and requested his assistance in locating Staab. Urista knew that Ballante had seen Staab while patrolling the Westwood Village area.

Ballante testified that he had seen Staab in the village on two occasions following defendant's arrest, once around the first of June, the second time around the first of July. On the two nights immediately preceding defend-

ant's trial Ballante attempted, without success, to find Staab by concentrating his patrol in the area where he had earlier seen him.

The day preceding the trial Urista telephoned defendant and asked him if he had seen Staab. Defendant said that he had not seen him for a while. Urista did not tell defendant why he was looking for Staab.

On this appeal defendant contends that the court erred in finding that the People had met their responsibilities under *Eleazer* v. *Superior Court, supra.* *Eleazer* requires only that the police and prosecutor undertake reasonable, good faith efforts to locate the informer. (1 Cal.3d at p. 853.) Whether such efforts have been made is a question of fact within the sound discretion of the trial court. (Cf. *People* v. *Rinegold,* 13 Cal.App. 3d 711, 719 [92 Cal.Rptr. 12].) Where there is substantial evidence in support of the trial court's finding, it will not be disturbed on appeal. (*People* v. *Mosher,* 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) Here the trial court found that the officers acted in good faith. In view of the facts that Staab adamantly refused to reveal his address but did agree to keep in touch with Urista, and that he did contact the officer on three occasions in accordance with that agreement, the court did not abuse its discretion in finding that the officers behaved reasonably in their efforts to keep in touch with Staab.

The judgment (order granting probation) is affirmed.