[Crim. No. 19657. Second Dist., Div. Four. Nov. 30, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM EDWARD CHEATHAM, Defendant and Appellant.

## COUNSEL

Joseph Giovanazzi for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Paul H. Sweeney and Bernardine M. Baldwin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Defendant was charged with, and convicted of, the sale of heroin, in violation of section 11501 of the Health and Safety Code. He was sentenced to state prison; he has appealed; we affirm the conviction.

In light of the issues on which this case turns only a brief statement of facts is required. Defendant was charged with selling heroin to an agent of the state narcotic bureau on an occasion when a police informant, Miss Gloria Mattix, was present and had introduced defendant to the agent. The sole issue at the trial was the identification of defendant as the seller. Defendant contends that the seller was his nephew, Hamilton, a man closely resembling defendant in height, weight and color.[1] The identification testimony for the People consisted primarily of that of the narcotic agent.

### I

 Since Miss Mattix was not only a witness to, but a direct participant in, the sale herein involved, it was obvious that she was a witness whose identity must be revealed.[2] Five months before the sale, the Supreme

---

[1]Evidence as to Hamilton's activities, his acquaintanceship with Miss Mattix, and his conduct when charged with the present offense at least lends color to that theory.

[2]We reject the Attorney General's claim that Miss Mattix was not an "informant" under the *Eleazer* rule. As that case recognizes, the informant need not be paid in money. Here the record shows that Miss Mattix regularly received "favors," in the form of non-prosecution for herself and her boy friend, in exchange for the kind of intervention on behalf of undercover agents that took place here.

Court had held, in *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42], that where an informer would be a material witness, the police must make such inquiries and take such steps as are reasonably necessary to insure that he can be located for trial if the defendant desires to interview, and perhaps to call, him.

■ Defendant moved, on the date set for trial, for discovery as to the identity and address of Miss Mattix. The People responded that they had lost track of her since before the preliminary examination; a week's recess to enable the People to search for her produced nothing. The trial court, after a hearing, held that the People had used due diligence to produce the witness. The evidence adduced at that hearing is undisputed. While a determination of lack of the required diligence could have been made, we cannot say that the trial court's determination is without substantial support.[3] The issue was one of fact as to which the trial court's finding is conclusive on appeal. (*People* v. *Goodman* (1971) 20 Cal.App.3d 284 [97 Cal.Rptr. 534].)

## II

After the sale, in an effort to determine the name and other data concerning the seller, the agent visited the local police office. He was shown a group of four or five pictures, none of which he recognized. Thereafter he was shown a single picture of defendant and identified it as a picture of the seller. When the defendant sought to subpoena these pictures, the return produced a picture of defendant.

None of the pictures shown to the agent in the first group was produced. The explanation was that the police officer who had shown that group to the agent had selected them at random and had kept no record of which pictures, so selected, he had originally shown.

The original picture which the agent had identified as that of the seller also was not produced, but the People produced a picture which the agent testified was "identical" with that originally shown to him, except that the original had had defendant's name written on its back while the one produced in court did not. We can find in the record no explanation for the failure to produce the picture first shown to the agent.

---

[3] The police had lost track of Miss Mattix shortly before the preliminary hearing, some three months before the trial; defense counsel was aware of that fact but made no request for her presence until the time of trial. The police efforts to keep in touch with her were quite similar to those recounted in *Goodman;* they were rendered fruitless by Miss Mattix' deceptive statements to the police and to the refusal of her friends to cooperate in locating her.

■ Relying on the statement in cases which have sustained pretrial photographic identifications—namely that the fairness or unfairness of the procedure could be tested in court by the production of the pictures—defendant claims that he was here denied the opportunity to pursue that method.

As to the first group of pictures, selected at random and which the witness testified did not include a picture of defendant, we can see no prejudice. Had those pictures been produced, cross-examination of the witness could have produced only the evidence which he gave—namely that none of them resembled defendant.

As to the single photograph there is a closer question. The witness testified that he could, and did in court, identify defendant as the seller on the basis of his observation of him at the time of sale. ■ The trial court expressly found that the in-court identification was not tainted by the circumstance that the witness had earlier been shown a single photograph. That finding, also is binding on us here. ■ It follows that the only significance of the single photograph was that the print originally shown to the witness had a name written on its back and, therefore, served to give a name to the already remembered, but anonymous, seller. If, in fact, the photographic print was one of Hamilton, with defendant's name erroneously written on it—as the defense theory implies—a cross-examiner could have used it only to urge on the jury that it did not correctly picture defendant. But that argument rests on the *picture,* not on the piece of paper on which it was imprinted. Once it was established that both copies—the one originally shown to the witness and the one produced in court—came from the same negative, the cross-examiner had available all the ammunition that he could use.[4]

The judgment is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied December 16, 1971, and appellant's petition for a hearing by the Supreme Court was denied January 26,. 1972. Peters, J., was of the opinion that the petition should be granted.

---

[4]It is true that the identicality of the two prints rests on the testimony of the People's witnesses. But we can see no distinction in effect between the foundational testimony here and testimony which purports to establish the produced print as being the same print seen at the station house. In both cases, the foundation rests on the jury's evaluation of the credibility of the witness; the law can neither require, nor secure, more.