[Crim. No. 21023. Oct. 30, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
STUART LEE KURLAND, Defendant and Respondent.

Counsel

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Jane Kirkland Fischer, Deputy Attorneys General, for Plaintiff and Appellant.

John K. Van de Kamp, District Attorney (Los Angeles), Harry B. Sondheim and Richard W. Gerry, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Appellant.

Robert R. Elledge for Defendant and Respondent.

Opinion

NEWMAN, J.—The People appeal an order suppressing evidence (Pen. Code, § 1538.5, subd. (a)) and a judgment dismissing a criminal information (*id.*, § 995). The information charged defendant with possession of cocaine (Health & Saf. Code, § 11350) and of marijuana for sale (*id.*, § 11359). We inquire whether a search warrant affidavit was deficient because it omitted information bearing on the credibility of an undisclosed informant. We conclude that the omissions asserted did not make the affidavit substantially misleading. Accordingly we reverse the judgment of dismissal and the order suppressing evidence.

On April 6, 1976, Officers Bell and Matt of the Modesto Police Department obtained a warrant to search Kurland's Discount Water Beds, a store owned by defendant, for cocaine, paraphernalia, and evidentiary documents. The search, carried out the same day, disclosed a "coke" spoon and vial of white powder in defendant's pocket. Defendant handed the searching officers a baggie of marijuana and some "zigzag" cigarette papers from "my" briefcase. Two other containers of marijuana and a .38 caliber pistol were found in his office. The marijuana weighed a pound and a half; the white powder in the vial proved to be cocaine.

The warrant was principally supported by Matt's affidavit. It declared in substance that Z, a confidential informant proved reliable in two earlier narcotics cases, had told Matt he frequently and recently saw defendant, at the store, in possession of substantial quantities of described substances. Z believed and defendant had confirmed that these

were cocaine and marijuana. Defendant had confided to Z his storage and sale of narcotics. He told Z he sometimes used "Steve's" house, behind his own, to keep contraband. Z had recently seen marijuana in Steven Mendes' residence behind defendant's home. Z also had recently seen a .38 caliber pistol on defendant's desk at the store. Defendant told Z he intended to kill, or have killed, the next person who crossed him. Defendant had asked Z to kill someone who had "ripped him off" in a drug deal.

The affidavit recited Matt's confirmation that the addresses given by Z were occupied by defendant and Mendes. Matt also alleged he had seen defendant pick up a concealed weapon permit application and had overheard defendant tell the clerk that it was for a .38 caliber pistol. A completed application was never submitted. According to the affidavit, Z's statements about use of "Steve's" residence to keep narcotics conformed to Matt's experience about the habits of drug dealers. The affidavit disclosed that Z was a former user of cocaine, was familiar with its packaging and use, was continuing to serve as a narcotics informant, and had never given false information. Finally the affidavit told why Matt feared for Z's safety if his identity were disclosed.[1]

At the suppression hearing, despite the People's repeated objections on grounds of protecting a confidential source, defense counsel examined Matt about his relation with Z. The answers revealed that Z had been convicted of a felony after Matt signed a 1974 complaint against him, that Z had been placed on probation, that Matt had a dozen contacts with Z in 1976, and that Matt and Z had discussed Z's cooperation as an informant. Matt also testified he did not know when he prepared the affidavit whether Z's probation had been terminated or whether Z had violated probation. Matt denied that threats were made to Z to induce his cooperation against defendant. Questions about the nature of the offenses charged in 1974 and whether Matt was then the investigating officer were never answered in open court. Some additional details were revealed in *in camera* hearings convened by the court to resolve the People's confidential-source objections.

---

[1]Z's information about recent narcotics activities at defendant's and Mendes' residences was substantially corroborated in a second affidavit, by Officer Ladd, which relied on X, another confidential informant. X's information about narcotics at the waterbed store, on the other hand, was too stale to buttress a warrant to search the store. (Cf. *Alexander* v. *Superior Court* (1973) 9 Cal.3d 387, 393 [107 Cal.Rptr. 483, 508 P.2d 1131].)

The court granted defendant's motion to suppress on the ground that "material information" was not disclosed in the affidavit which might have led the magistrate "to conclude differently in respect to the credibility of the confidential informant." The information was then dismissed.

The People say that the affidavit was not misleading and that the disputed information was withheld properly and in good faith on grounds of privilege. Therefore we must decide what rules apply when defendant charges that a warrant affidavit, though sufficient on its face, is incomplete.

### 1. May defendant show omission from the affidavit?

In California a facially valid search warrant affidavit may be attacked on grounds that it contains deliberate or negligent misstatements. The rule arises both from our Constitution's guarantee against unreasonable search and seizure and from statutes regarding suppression of illegally obtained evidence. (Cal. Const., art. 1, § 13; Pen. Code, §§ 1538.5-1540; *People* v. *Cook* (1978) 22 Cal.3d 67, 74 [148 Cal. Rptr. 605, 583 P.2d 130]; *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 100-101 [104 Cal.Rptr. 226, 501 P.2d 234].)[2] It rests upon the constitutional preference for warrants, which presupposes that probable cause determinations will be made independently by neutral, fully informed judicial officers rather than by the police. A misinforming affidavit hinders the magistrate's inference-drawing powers and increases the likelihood that privacy will be invaded without probable cause. (*Cook, supra,* 22 Cal.3d at pp. 81-82; see *Aguilar* v. *Texas* (1964) 378 U.S. 108, 110-111 [12 L.Ed.2d 723, 726, 84 S.Ct. 1509]; *Johnson* v. *United States* (1948) 333 U.S. 10, 13-14 [92 L.Ed. 436, 440, 68 S.Ct. 367]; *Theodor, supra,* 8 Cal.3d at pp. 90-91, fn. 6, 96.)

This court in *Theodor* recognized that similar difficulties might arise when an affidavit simply fails "to *include* information which might otherwise negate a finding of probable cause." (8 Cal.3d at p. 96, fn. 11;

---

[2]*Theodor*, holding that negligent misstatements must be excised from an affidavit, mentioned both state and federal search and seizure clauses. (*Cook, supra,* 22 Cal.3d at p. 81, fn. 4.) Subsequently the United States Supreme Court concluded, contrary to *Theodor*, that the federal clause imposes no sanctions for negligent misstatements and compels mere excision of those that are intentional or reckless. (*Franks* v. *Delaware* (1978) 438 U.S. 154, 155-156 [57 L.Ed.2d 667, 672, 98 S.Ct. 2674].) Accordingly, when *Cook* determined that deliberate or reckless misstatements compel automatic quashing of the warrant Justice Mosk's opinion relied solely on California law (22 Cal.3d at p. 88), as we do here.

see also *Cook, supra,* 22 Cal.3d at p. 92.) The Courts of Appeal have consistently held that an affidavit may be insufficient when it omits facts adverse to the warrant application. (*People* v. *Neusom* (1977) 76 Cal.App.3d 534, 538-539 [143 Cal.Rptr. 27]; *Morris* v. *Superior Court* (1976) 57 Cal.App.3d 521, 526 [129 Cal.Rptr. 238]; *People* v. *Barger* (1974) 40 Cal.App.3d 662, 668-669 [115 Cal.Rptr. 298]; see *People* v. *Webb* (1973) 36 Cal.App.3d 460, 470-471 [111 Cal.Rptr. 524].)

 Now directly faced with the issue, in general we endorse those holdings. An affidavit may be as inaccurate when it omits facts as when it misstates them. The crucial, inference-drawing powers of the magistrate may be equally hindered in either case, with identical consequences for innocent privacy. (See Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer* (1974) 25 Mercer L.Rev. 741, 749.) We therefore conclude that the California Constitution and statutes permit defendant to attack a facially sufficient warrant affidavit on grounds that, though it contains no affirmative falsehoods, it is incomplete.

## 2. *What facts must affiant include?*

Though similar for many purposes, omissions and misstatements analytically are distinct in important ways. Every falsehood makes an affidavit inaccurate, but not all omissions do so. An affidavit need not disclose every imaginable fact however irrelevant. It need only furnish the magistrate with information, favorable and adverse, sufficient to permit a reasonable, common sense determination whether circumstances which justify a search are probably present. (See *United States* v. *Harris* (1971) 403 U.S. 573, 577-585 [29 L.Ed.2d 723, 730, 91 S.Ct. 2075]; *Spinelli* v. *United States* (1969) 393 U.S. 410, 419 [21 L.Ed.2d 637, 645, 89 S.Ct. 584]; *United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Stout* (1967) 66 Cal.2d 184, 192-193 [57 Cal.Rptr. 152, 424 P.2d 704].)

Recognizing this, the Courts of Appeal seem consistently to have held that an affiant's duty of disclosure extends only to "material" or "relevant" adverse facts.[3] At the same time, they have applied the

---

[3]*Morris,* which contains the lengthiest discussion of materiality, defined the term in several ways. Omitted facts were deemed material "to the extent that it can be said, fairly, that [by their omission] the magistrate's inference-drawing process was interfered with, *substantially*" (57 Cal.App.3d at p. 524, italics added), or if they "*could* have had an adverse effect on the normal inference-drawing process of the magistrate"

materiality requirement to reach only those omissions which significantly distorted the probable cause analysis. (See *Neusom, supra,* 76 Cal. App.3d at p. 541; *Morris, supra,* 57 Cal.App.3d at p. 527; *Barger, supra,* 40 Cal.App.3d at pp. 668-669; *Webb, supra,* 36 Cal.App.3d at p. 470.)[4]

We think the results reached by these decisions strike a proper balance among practicality, accuracy, and the policy of encouraging resort to the warrant process. (See *Ventresca, supra,* 380 U.S. at pp. 106, 108 [13 L.Ed.2d at pp. 687, 688-689]; *People* v. *Keener* (1961) 55 Cal.2d 714, 723 [12 Cal.Rptr. 859].) ▮ We conclude, as Courts of Appeal effectively have concluded, that facts are "material" and hence must be disclosed if their omission would make the affidavit *substantially misleading.* On review under section 1538.5, facts must be deemed material for this purpose if, because of their inherent probative force, there is a substantial possibility they would have altered a reasonable magistrate's probable cause determination.

The People urge that, even if Officer Matt intentionally omitted material facts, the warrant evidence should not be suppressed because the omissions were proper, or at least reasonable and in good faith. Defendant argues, on the other hand, that suppression is the proper remedy whenever material facts are intentionally or deliberately excluded. We must therefore decide what remedies apply when omissions from the affidavit are found.

### 3. *What are the remedies for an incomplete affidavit?*

*Theodor* recognized that all inaccuracy in the affidavit impedes the neutral determination of probable cause. However, it concluded, probability and not certainty is the relevant standard; and constitutional

---

(*id.,* at p. 526, italics added) or "*could* have negated the magistrate's finding of probable cause" (*id.,* at p. 527, italics added) or "might" have caused the magistrate to find an informant "unreliable and his information untrustworthy...." (*Ibid.*)

[4]In *Neusom,* for example, the fact that a police informant had not been skin-searched before making a narcotics "buy" was deemed "insignificant" when his reliability had otherwise been established by his prior accuracy and his admission of penal offenses. *Webb* held that when the informant's heavy narcotics use and purchases of narcotics from defendant were disclosed, "the magistrate does not need to see [the informant's extensive] rap sheet to know" that his credibility might be tainted by bad character and motives. (See discussion, *infra.*) On the other hand, police efforts to manufacture reliability in a suspected informant (*Morris*) and failure to disclose that an informant had recanted (*Barger*) have been deemed material.

protections against unlawful search and seizure are subject to "the overriding principle of reasonableness...." Negligence by an affiant should be deterred, but reasonable attempts at accuracy should be accepted. (8 Cal.3d at pp. 96-97.) Thus, the court held, where affiant reasonably believed his statements the warrant should stand. When he was not reasonable in believing them, they should be excised and the remaining allegations retested for probable cause. (*Id.*, at pp. 100-101.)

In *Cook*, we considered the appropriate sanction for reckless or knowing falsehoods. We explained why mere negligence calls for the "correct and retest" device, rather than quashing of the warrant. Negligent falsehood, we reasoned, does not undermine the magistrate's conclusion that affiant was generally credible. Hence the remaining statements in the affidavit may be presumed true and their sufficiency retested by a reviewing court under section 1538.5. But lying or reckless inaccuracy may render the truthfulness of all statements in the affidavit suspect. The reviewing court independently cannot reassess the affiant's credibility, since that is a matter exclusively for the magistrate. It therefore lacks a "reliable factual basis" to determine probable cause. There remains in such cases no alternative but to quash the warrant. (22 Cal.3d at pp. 84-87.)

*Cook* expressly reaffirmed the "rule of reason," holding that the exclusionary doctrine developed in *Theodor* is intended, by deterring unlawful police conduct, to minimize the risk that innocent privacy will be invaded. Once unlawful conduct is shown, *Cook* explained, the scope of the exclusionary rule will depend on whether the inaccuracy was negligent, on the one hand, or reckless or deliberate on the other. But if the affidavit reflects a reasonable attempt at truth, constitutional principles are satisfied; and no purpose is served by vitiating the warrant, no matter how crucial the inaccuracy. (22 Cal.3d at pp. 82-88.) We adhere to that analysis here.

*Theodor* and *Cook* described misstatements as "reasonable," "negligent," and "intentional," applying the exclusionary rule accordingly. By analogy, the Courts of Appeal have held that material facts "negligently" omitted must be added to the affidavit by the reviewing court and the affidavit then retested for probable cause. "Intentional" omissions of material facts have been deemed to require an automatic quashing of the warrant. (*Barger, supra,* 40 Cal.App.3d 662, 669; *Neusom, supra,* 76 Cal.App.3d 534, 538-539; *Morris, supra,* 57 Cal.App.3d 521, 527-528.)

Defendant contends that, under *Theodor* and *Cook*, negligence is synonymous with inadvertence and that every conscious omission of a material fact, no matter how reasonable or justified, should invoke the sanction of suppression. We disagree.

Both defendant and lower courts have failed to realize that the *Theodor-Cook* system of remedies may not be applied exactly to omissions. Unlike misstatements, omissions do not always render an affidavit inaccurate. As we have seen, only material omissions have that effect. Intentional omissions, unlike the intentional misstatements considered in *Cook*, are not necessarily an effort to mislead the magistrate. ■ ■■■ They may arise from a correct, or at least reasonable, conclusion that the omitted facts were immaterial or privileged.[5] The procedures and remedies applicable to omissions must account for those crucial differences.

■ First, the reviewing court must determine whether any omissions asserted are material, as herein we have defined that term. Because an affidavit with no material omissions is substantially accurate and truthful, it corresponds for most purposes to an affidavit with no misstatements. Once all the asserted omissions have been deemed immaterial, the primary question is whether the affidavit on its face supports probable cause. If it does, the warrant usually must stand. (See, e.g., *People v. Neusom, supra,* 76 Cal.App.3d at p. 541; *People v. Webb, supra,* 36 Cal.App.3d at p. 470; but see discussion, *post.*)

■■ If an omission is found material, the reviewing court must next determine, as in *Theodor* and *Cook*, whether it arose innocently or from culpable conduct. However, since not all intentional omissions of material facts are blameworthy, the reviewing court must apply a modified version of the *Theodor-Cook* formula for culpability. The necessary modification is plain. The trial court must decide whether the material omission was either (1) reasonable, (2) negligent, or (3) *reck-*

---

[5]For example, the People here invoke their privilege to withhold from defendant the identity of a confidential source. It is well settled that defendant has no right to discover an informant's identity solely to attack a facially valid search warrant affidavit. That right arises only where defendant shows a reasonable possibility that informant is a witness to guilt or innocence. (Evid. Code, § 1042, subds. (b), (d); *Theodor, supra,* 8 Cal.3d 77, 88; *People v. Keener, supra,* 55 Cal.2d 714, 723; see also *McCray v. Illinois* (1967) 386 U.S. 300, 310-314 [18 L.Ed.2d 62, 70-72].) It follows that a warrant affidavit need not disclose details that reasonably would tend to reveal the informant's identity.

*lessly inaccurate or intentionally misleading.* That the omission itself was "intentional" rather than inadvertent may be relevant to those issues, but may not alone be dispositive.

A material omission is reasonable when despite the exercise of due care, affiant was ignorant of the omitted fact or forgot to include it, or his conclusion that it was privileged or immaterial was reasonable even if incorrect. Where material omissions are reasonable, whether volitional or inadvertent, no sanction should be imposed; the situation corresponds to that of reasonable misstatements. Because affiant will, in such cases, have done all that can reasonably be expected to comply with constitutional standards, little deterrent purpose would be served by further review of the affidavit. (*Theodor, supra,* 8 Cal.3d at pp. 97-100.)

Negligent omissions of material fact occur when the affiant is unreasonably ignorant of facts, unreasonably forgets to include them, or makes a good faith but unreasonable decision that they need not or should not be included. In such cases the "add and retest" formula developed in *Barger, Morris,* and *Neusom* is proper. It discourages carelessness and helps eliminate the likelihood that a negligent mistake may cause an erroneous finding of probable cause. Yet it recognizes the affiant's good faith effort at accuracy. (*Cook, supra,* 22 Cal.3d at pp. 84-85.)

The dissent here suggests that any intentional material omission should automatically vitiate the warrant. As with intentional misstatements, it argues, deliberate omission of a material fact undermines the magistrate's implicit finding that the affiant was credible and deprives the reviewing court of a "reliable factual basis" to redetermine probable cause. (See *Cook, supra,* 22 Cal.3d at pp. 86-87.) We disagree.

An intentional omission is not necessarily culpable. Moreover, an omission can be both intentional and negligent at the same time. Thus an intentional omission, even where material, should not automatically invoke *Cook*'s "suspect-credibility" reasoning, though a deliberate lie properly does. Something more than mere intent to omit is required to justify the conclusion that statements that do appear in the affidavit may not be trusted.[6]

---

[6]The dissent carries the argument even further, suggesting that a material omission about the informant completely undermines his credibility and that the facts he has

The dissenting opinion here suggests that a reviewing court may not assume the magistrate would have found probable cause had he known of the negligent omission. Hence, the dissent reasons, an affidavit materially incomplete because of affiant's negligence may never support a decision to uphold the warrant. That view contravenes both *Theodor* and *Cook*.

Every negligent inaccuracy, whether misstatement or substantial omission, might have induced a fully informed magistrate to find probable cause lacking. Yet nothing in our recent cases suggests that the court therefore must quash the warrant. On the contrary, the reviewing court simply eliminates the negligent inaccuracy, assumes the affidavit to be otherwise truthful, and determines *independently* whether, as corrected, the affidavit is "sufficient, under settled standards, to [establish] probable cause . . . ." (*Theodor, supra*, 8 Cal.3d at p. 101, fn. 14; *Cook, supra*, 22 Cal.3d at pp. 84-85.)

That "rule of reason" assumes, as does the dissent, that the reviewing court may not second-guess the magistrate. (*Cook, supra*, at p. 85.) However, it also recognizes that we do not minimize unreasonable invasions of privacy by rejecting, on review, the entire showing of a credible affiant because negligently he or she was inaccurate in one respect. (*Ibid.*) Moreover, it encourages the affiant to inform the magistrate fully by extending the duty of disclosure in the affidavit beyond those facts that necessarily would preclude a finding of probable cause.[7]

---

provided to support probable cause must therefore be rejected. However, statements about the informant's reliability are simply part of the probable cause showing that a reviewing court must accept as true if presented by a credible affiant. (*Cook*, 22 Cal.3d at pp. 84-85.) The court may simply add the fact omitted and decide whether the corrected, presumably truthful affidavit establishes the informant's reliability.

[7]Neither *Theodor* nor *Cook* faced the question whether a "material" misstatement invariably vitiates the warrant. As we have seen, it is unnecessary to find a falsehood material in order to find the affidavit inaccurate. The importance of the falsehood becomes pertinent only when the affidavit is retested for probable cause. *Theodor* and *Cook* do not use the term "material" in that context. Omissions present a more complex problem in which the importance of the omitted fact must be considered at the outset to determine whether the affidavit is inaccurate. This threshold test we have defined in terms of materiality. The importance of the omission must then be assessed again when, as in *Theodor*, the affidavit is corrected and retested.

While *Theodor* and *Cook* do not apply that two-step analysis they do not preclude it. Every negligent misstatement in an affidavit necessarily involves a fact that affiant, at least, deemed important to the probable cause analysis. But not all such misstatements vitiate the warrant.

The dissent urges that an "add and retest" remedy for negligent omissions is an insufficient sanction to deter improper police conduct. Such a view ignores the express holding of *Theodor*, so recently confirmed in *Cook*, that negligent inaccuracy calls only for correction and retesting. (*Theodor*, 8 Cal.3d at pp. 100-101; *Cook*, 22 Cal.3d at pp. 82-85.)

Indeed, the rule espoused would frustrate rather than promote the deterrent goals of those decisions. It would contravene the principle of reasonable accuracy, under which mistakes occurring despite the exercise of due care are not punished, however crucial. (*Theodor*, 8 Cal.3d at pp. 97-101; *Cook*, 22 Cal.3d at p. 82.) And because it would not leave a sterner sanction for deliberate attempts to mislead the magistrate (see discussion, *post*), the police would have nothing to lose by sliding from mere carelessness into recklessness and treachery.

██ When an abuse of that gravity appears—when affiant intentionally omits any fact for the purpose of deceiving the magistrate or recklessly disregards the accuracy and completeness of the affidavit —*Cook*'s analysis fully applies. An omission of that kind is no different from a reckless falsehood or a deliberate lie. Any such attempt to mislead the magistrate undermines the judicial process, makes the entire affidavit suspect, and calls for harsh deterrence. The appropriate response is to quash the warrant regardless of whether the omission ultimately is deemed material.

██ The burden on the issues of materiality, privilege, and affiant's culpability is to be allocated as in the case of misstatements. If the defense states "with some specificity" its reasons for believing that material facts were omitted, it may try to show such omissions and their materiality. The obligation of showing that material omissions were proper or reasonable rests with the People, but defendant has the burden of demonstrating recklessness or intent to mislead. (See *Cook, supra*, 22 Cal.3d at pp. 89-92; *Theodor, supra*, 8 Cal.3d at p. 102.)

We are aware of *Cook's* holding that defendant need not show bad faith or ulterior motive to quash a warrant for deliberate falsehood, since "[t]hat would indeed be a difficult burden to sustain...." (22 Cal.3d at p. 91.) But *Cook* also reasoned that such a showing was "of little if any relevance: once the defendant has shown the affiant *knowingly lied under oath* in any respect, the remainder of his allegations

become suspect regardless of what his ulterior motives may have been.
. . ." (*Ibid.*, italics added.)

In other words, perjury is sufficient evidence of lack of credibility; and proof of an ulterior motive for the lie is redundant. But intentional *omissions* do not necessarily have the same effect. There must be something more that gives an intentional omission the culpable quality of perjury. An intent to mislead supplies the element of purposeful deception already implicit in lying.

Demonstrating purposeful deception may be a difficult burden, but we do not think it is an insurmountable one. "It may be evidenced by the affirmative statement or admission" of affiant. "If he is silent or [denies a purpose to mislead]" it may be shown indirectly. (*Id.*, at p. 90.) For example, if affiant denies knowledge of omitted facts his protestations may be overcome by the testimony of those present when he learned them. If he says he did not disclose the facts because he thought they were privileged or immaterial, the evidence may permit an inference that no such belief could have arisen in good faith. The more unreasonable the circumstances surrounding an omission, the more compelling the inference of recklessness or intentional deception.[8]

If defendant can show why the affiant sought to deceive—his ulterior motive—he certainly may do so to bolster his circumstantial case. Yet such an inquiry often will be unnecessary under the standard we adopt.

All issues necessary to determine the warrant's validity are to be resolved in the first instance by the trial court at the suppression hearing.[9] Here the court did not make the necessary determinations. It suppressed the warrant evidence simply on grounds that the omissions were material and volitional. Issues of privilege, negligence, recklessness, and intentional deception never were resolved. On that ground alone, the suppression order and the consequent judgment of dismissal must be reversed.

---

[8]*Morris, supra*, shows that intentional deception indeed may be provable in a particular case. There an affiant concealed efforts to manufacture reliability in an informant he himself suspected. (57 Cal.App.3d at p. 532.)

[9]In assessing the reasonableness of a material omission courts should, of course, bear in mind the purposes of warrant affidavits and the practical conditions under which they are usually prepared. (*Spinelli* v. *United States, supra*, 393 U.S. 410, 419 [21 L.Ed.2d 637, 645]; *United States* v. *Ventresca, supra*, 380 U.S. 102, 108 [13 L.Ed.2d 684, 688-689]; *People* v. *Keener, supra*, 55 Cal.2d 714, 723; and see discussion, *ante*, p. 384.)

### 4. Were the omissions material?

The trial court apparently believed that the details of an anonymous informant's criminal record and police history are necessary to avoid a misleading impression of the informant's reliability and credibility. ▮ ▮▮▮ Under the circumstances of this case, we disagree.[10]

Long settled law already creates a strong inference that information from police contacts is to be viewed with extreme caution. An affidavit which relies on information from a tipster must set forth underlying facts justifying the conclusion that the source is reliable or the information itself credible. (*Aguilar v. Texas, supra*, 378 U.S. 108, 114 [12 L.Ed.2d 723, 728-729]; *Alexander v. Superior Court, supra*, 9 Cal.3d 387, 393.) An affiant's conclusory opinions of reliability or credibility are not enough, and mere quantity and detail in the tipster's statements do not render them worthy of belief. (*People v. Scoma* (1969) 71 Cal. 2d 332, 340 [78 Cal.Rptr. 491, 455 P.2d 419].) Reliability must be shown independently, as by corroboration of the information received (*Spinelli v. United States, supra*, 393 U.S. 410, 417-418 [21 L.Ed.2d 637, 644]; *Alexander, supra*, 9 Cal.3d at p. 395), the informant's previous record of accuracy in similar situations (*Jones v. United States* (1960) 362 U.S. 257, 270-271 [4 L.Ed.2d 697, 707-708, 80 S.Ct. 725, 78 A.L.R.2d 233]), or indications that the informant has spoken against penal interest. (*United States v. Harris, supra*, 403 U.S. 573, 583 [29 L.Ed.2d 723, 734].) If the affidavit includes insufficient details to permit a reasonable belief in probable accuracy, it fails to demonstrate probable cause as a matter of law.

The rule that the affiant must demonstrate a tipster's probable reliability or credibility arises not only from the usual distrust of hearsay evidence but also from an assumption that information provided by customary police sources is inherently suspect. Accordingly, the rule does not apply to information from disinterested citizens who accidentally observe crime and report it forthrightly as a civic duty. "Citizen informants," once identified as such, are presumptively reliable. (E.g., *People v. Smith* (1976) 17 Cal.3d 845, 850-851 [132 Cal.Rptr. 397,

---

[10]On review of a suppression hearing the trial court's findings of fact must be upheld if substantially supported. (*People v. Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].) Materiality, however, is a question of law on which an appellate court may exercise independent judgment. Implicit in our definition of materiality (*ante*, p. 385) is the assumption that the omitted information might reasonably have altered the magistrate's decision.

553 P.2d 557]; *People* v. *Ramey* (1976) 16 Cal.3d 263, 269, and fn. 4 [127 Cal.Rptr. 629, 545 P.2d 1333]; *People* v. *Hill* (1974) 12 Cal.3d 731, 761 [117 Cal.Rptr. 393, 528 P.2d 1], disapproved on other grounds, *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal. Rptr. 786, 558 P.2d 872]; *Krauss* v. *Superior Court* (1971) 5 Cal.3d 418, 421-422 [96 Cal.Rptr. 455, 487 P.2d 1023], disapproved on other grounds, *Cook, supra,* 22 Cal.3d at pp. 98-99; *People* v. *Guidry* (1968) 262 Cal.App.2d 495, 497-498 [68 Cal.Rptr. 794]; *People* v. *Lewis* (1966) 240 Cal.App.2d 546, 549-550 [49 Cal.Rptr. 579].)

In *Smith* the court explained that distinction by quoting this succinct statement in *People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814-815 [124 Cal.Rptr. 585]: "A 'citizen-informant' is distinguished from a mere informer who gives a tip to law enforcement officers that a person is engaged in the course of criminal conduct. [Citations.] Thus, experienced stool pigeons or persons criminally involved or disposed are not regarded as 'citizen-informants' *because they are generally motivated by something other than good citizenship.* [Citations.]" (*Smith, supra,* 17 Cal.3d at pp. 850-851; italics added.)

Such persons frequently have criminal records and a history of contact with the police. Often they are free only on probation or parole or are themselves the focus of pending criminal charges or investigations. All familiar with law enforcement know that the tips they provide may reflect their vulnerability to police pressure or may involve revenge, braggadocio, self-exculpation, or the hope of compensation. (See *United States* v. *Harris, supra,* 403 U.S. 573, 599 [29 L.Ed.2d 723, 742-743] [dis. opn. of Harlan, J.]; *United States* v. *Gonzalez* (5th Cir. 1974) 491 F.2d 1202, 1207-1208; *United States* v. *Unger* (7th Cir. 1972) 469 F.2d 1283, 1287, cert. den. (1973) 411 U.S. 920 [36 L.Ed.2d 313, 93 S.Ct. 1546]; *United States* v. *Kinnard* (D.C. Cir. 1972) 465 F.2d 566, 570; *People* v. *Hambarian* (1973) 31 Cal.App.3d 643, 655 [107 Cal.Rptr. 878]; *People* v. *Cheatham* (1971) 21 Cal.App.3d 675, 677, fn. 2 [98 Cal.Rptr. 670]; Moylan, *supra,* 25 Mercer L.Rev. at pp. 769-779.) The details of their criminal pasts are not necessary to place the magistrate on notice of their potential unreliability. (*People* v. *Webb, supra,* 36 Cal.App.3d 460, 470.)

Both an issuing magistrate and a reviewing court must initially assume that information from such sources is unreliable for purposes of probable cause. Such a rule alerts the magistrate to the very danger de-

fendant urges—that the statements of tipsters from "criminal society" may receive unwarranted weight.

 We therefore conclude that, in most cases, the issue of possible unreliability is adequately presented to the magistrate when the affidavit reveals that the affiant's source of information is not a "citizen-informant" but a garden-variety police tipster. In such circumstances, predictable details of the informer's criminal past will usually be cumulative and therefore immaterial.

Here, Matt's affidavit made clear that Z was not a citizen-informant. It recited that Z had supplied narcotics information in the past, was himself a former user of hard drugs, and was continuing to operate as a confidential police source. It detailed his association not only with defendant but with Steven Mendes, who the informant believed was also involved in narcotics. Thus Z was clearly identified as a more-or-less-regular police agent, useful for his drug connections; and the magistrate was alerted to draw adverse conclusions about Z's reliability.

The details of Z's past revealed at the open suppression hearing would have added little to the magistrate's deliberations. Essentially they showed that Matt's efforts had contributed to Z's felony conviction, that Z was on probation, and that Z and Matt had discussed Z's cooperation as an informant. Even if those facts might support an inference of Z's dishonesty or vulnerability to police pressure, that inference was already inherent in Z's status as a confidential tipster. The omitted details provided no extraordinary indication that Z's information in this particular case was unreliable.[11]

Defendant argues in particular that Z's 1974 felony conviction for receiving stolen property was necessarily material since it demonstrates a specific predisposition to dishonesty. (Pen. Code, § 496 [guilty knowl-

---

[11] In both *in camera* hearings convened by the trial court to resolve Matt's invocation of the informant-nondisclosure privilege, Z's police history was examined at greater length. We have studied the sealed transcript of those hearings, and no facts emerge suggesting more than the usual possibilities of lies or mistakes.

Our conclusion is not altered by the fact that the judge who issued the warrant also presided at the suppression hearing and found that the omitted information could have influenced his original probable cause determination. We assume he meant that the new facts had given him pause about the correctness of his original decision. His candor and conscientiousness are commendable. However, as we have explained, materiality is a legal question. His declaration that particular facts could have influenced his probable cause analysis, though indeed relevant, is not dispositive.

edge is element of offense]; cf., *People* v. *Spearman* (1979) 25 Cal.3d 107, 114 [157 Cal.Rptr. 883, 599 P.2d 74].) We disagree. As we have said, the magistrate must assume, subject to rebuttal in the affidavit, that a police informant may be unreliable. Thus, evidence of general dishonesty which might be admissible at trial to impeach an otherwise convincing witness is not necessarily important to the fair portrayal of an undercover informant's reliability in a warrant affidavit.

■ We caution that when the affiant knows or should know of specific facts which bear adversely on the informant's probable accuracy *in the particular case*, those facts must be disclosed. For example, if police have actually threatened or coerced the informant, or the informant bears a grudge against the defendant or is seeking to avoid or mitigate personal difficulties with the authorities, concrete evidence on those issues is material for purposes of the affidavit. In addition, if the informant's statements are substantially contradicted by independent police investigation, or if the affiant knows or should know of other specific circumstances which do or should lead him to suspect the informant's current credibility, the affidavit must say so.

■ Similarly when the affidavit makes specific affirmative disclosures for purposes of buttressing the informer's general reliability, it must also include the equally specific adverse information necessary to prevent misrepresentation. ■ ■ For example, if the affidavit states that the informant has proved reliable in previous investigation it must also set forth similar instances of prior unreliability. (See Moylan, *supra*, 25 Mercer L.Rev. at p. 759.)[12]

■ As we have explained, the suppression hearing in this case revealed no specific indicia of inaccuracy; and the affidavit set forth

---

[12]The guidelines are limited, of course, by the confidential informant privilege. When the affiant reasonably concludes that otherwise necessary details would tend to disclose the identity of an informant, he must nonetheless include as much detail as practicable and must at least state generally that specific grounds for suspicion exist. An affidavit which meets those requirements and gives substantial grounds for crediting the informant is legally sufficient to support a decision by the magistrate to issue the warrant. (See Pen. Code, §§ 1525-1528; *Theodor, supra*, 8 Cal.3d at pp. 85-87.) However, the magistrate may inquire further and require that the informant be produced or his identity disclosed in order to evaluate fully the existence of probable cause. (*Keener, supra*, 55 Cal.2d 714, 721-722.)

Magistrates and reviewing courts should view with some suspicion affidavits which disclose detailed, favorable information about the informant's credibility or reliability but treat similar adverse information lightly on the ground that further details might reveal the informant's identity.

general facts sufficient to invoke the suspicion and scrutiny appropriate for police informants generally. Thus the record fails to show that material facts bearing on informant's credibility and reliability were omitted from the affidavit.

### Conclusion

Because we think that the affidavit was not substantially misleading, the warrant must stand unless Officer Matt acted recklessly or with intent to deceive when he omitted the facts at issue.

The order suppressing evidence and the judgment of dismissal are reversed. The cause is remanded for further hearings solely on the issue whether facts were excluded from the affidavit recklessly or with the specific intent of misleading the magistrate.

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**CLARK, J.**—I concur in the judgment and opinion of the court except insofar as it reaffirms the holding of *People* v. *Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130]—that evidence obtained pursuant to a warrant issued in reliance on an affidavit containing deliberately false statements of fact must be excluded regardless of the effect of those statements on probable cause. I continue to believe the appropriate remedy in such a case is for the judge conducting the *Theodor*[1] hearing to entirely reweigh the affiant's credibility if he is found to have lied in part. (22 Cal.3d at p. 101 (Clark, J., dis.).)

**BIRD, C. J.**—I dissent. When the police have withheld adverse information which might have influenced a neutral and detached magistrate's decision to issue a warrant, the warrant should be quashed. This result should follow regardless of the motive which led the police to omit the information.[1]

---

[1] *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234].

[1] Where the omitted adverse facts are merely cumulative, the warrant should stand. While this exception to the rule of exclusion might encourage law enforcement personnel to substitute their assessments of relevance for that of the magistrate, this will be at most a minor tendency. As the discussion below suggests, the magistrate's determination of probable cause will not be suspect in such cases, despite the police's breach of their constitutional duty to inform the magistrate of *all* relevant adverse information known to them. Thus, suppression is not warranted as a means of enforcing the Fourth Amendment in this limited situation.

The majority's scheme for dealing with such omissions in affidavits for search warrants will result in a system in which relevant facts, i.e., those facts which might lead to a decision not to issue a warrant, will be withheld from the magistrate. This will "dilut[e] important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry." (*Spinelli* v. *United States* (1969) 393 U.S. 410, 419 [21 L.Ed.2d 637, 645-646, 89 S.Ct. 584], fn. omitted.) This is neither good law nor good sense.

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (*Johnson* v. *United States* (1948) 333 U.S. 10, 13-14 [92 L.Ed. 436, 440, 68 S.Ct. 367], fn. omitted.) In effect, the magistrate views, from a neutral and detached perspective, the body of information which is known to the police and which, in their eyes, supports a finding of probable cause and the issuance of a warrant. In this constitutionally cast role as factfinder, it is the province of the magistrate and not the police to determine the relevance and credibility of the information which law enforcement personnel have learned and the weight of the various inferences which may reasonably be drawn from it. However, because of the "unavoidable circumstance that the application for the warrant is not an adversary proceeding" (*People* v. *Cook* (1978) 22 Cal.3d 67, 87, fn. 9 [148 Cal. Rptr. 605, 583 P.2d 130]), the magistrate must depend on the police to furnish the facts which form the basis for his determination as to whether he should issue a warrant.

When the police edit their information and withhold from the magistrate potentially adverse facts which they view as irrelevant or cumulative, then the police interfere with the magistrate's constitutional function. Although in such cases warrant applications may contain facts rather than conclusions, such affidavits are nonetheless conclusory in their selectivity. As a result, there is an increased risk that the privacy of the citizenry will be invaded on the basis of the *police's* as opposed to the court's assessment of relevance and reasonableness.

Acknowledging the fundamental constitutional principle that "probable cause determinations [should] be made independently by neutral,

*fully informed* judicial officers rather than by the police" (maj. opn., *ante*, at p. 383, italics added), the majority properly find that an affiant bears a duty to disclose all "material" or "relevant" adverse facts in a warrant application. (Maj. opn., *ante*, at p. 384.) However, the remedies which the majority prescribe for omissions of relevant facts from search warrant applications are not adequate to protect the principles at issue here.

When presented with a warrant application, the magistrate must "make in effect two successive determinations: first he must satisfy himself that the facts are as the applicant states them to be, then he must consider whether those facts constitute probable cause for issuance of the warrant." (*People* v. *Cook, supra*, 22 Cal.3d at p. 84, fn. omitted.) Under well-established rules of appellate review, the magistrate's factual findings, including any assessment of the affiant's credibility or the informant's reliability, are binding. Appellate courts may not substitute their judgments on such questions for that of the magistrate. (*Id.*, at p. 84, citing *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 154 [81 Cal.Rptr. 613, 460 P.2d 485].)

Therefore, as this court explained in *Cook*, when a magistrate issues a warrant, the reviewing court must initially presume that "he found the affiant correctly believed in the truth of each of the factual allegations of the affidavit." (*People* v. *Cook, supra*, 22 Cal.3d at p. 84.) However, if an affiant has intentionally supplied the magistrate with misstatements, a reviewing court may no longer excise the offending allegation and presume the magistrate to have found the remainder to be true. "If the magistrate had known the officer was deliberately lying to him in making certain of the allegations in the affidavit, he might well have disbelieved some or all of the remainder. His ignorance of this crucial fact undermines his determination of the officer's credibility, and the reviewing court can no longer rely on that determination for the facts necessary to test the magistrate's conclusion of probable cause. In short, although the court can excise the intentionally false allegations it cannot presume the remainder to be true. Lacking a reliable factual basis in the affidavit, the court has no alternative under settled constitutional principles but to quash the warrant and exclude the products of the search." (*Id.*, at pp. 86-87, fn. and citations omitted.)

The omission from the affidavit of facts relevant to an informant's reliability similarly affects the integrity of the factual findings underlying

a magistrate's decision to issue a warrant. When the police omit information which might have led the magistrate to reject the warrant application, a reviewing court can no longer rely upon the magistrate's presumptive finding that the informant was reliable. The rationale which led this court in *Cook* to conclude that a warrant should be quashed when it is based on an affidavit containing deliberate misstatements by the affiant is applicable here and should lead to the same result. If the magistrate had all the relevant adverse facts before him, he might well have found that the informant was not sufficiently reliable to support the issuance of the search warrant. The magistrate's ignorance of these facts undermines any determination of the informant's reliability. Thus, a reviewing court can no longer rely on that determination for the facts necessary to test the magistrate's conclusion of probable cause.

This court should adopt a rule that would encourage the police to keep the magistrate fully informed of the factual information necessary to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." (*Aguilar* v. *Texas* (1964) 378 U.S. 108, 111 [12 L.Ed.2d 723, 727, 84 S.Ct. 1509].) Indeed, the Constitution is better served if the police are overinclusive rather than underinclusive in the information they provide the magistrate. Further, the police would be better served by a clear rule rather than the detailed taxonomy which the majority opinion advocates. (See generally *In re Tony C.* (1978) 21 Cal.3d 888, 902 [148 Cal.Rptr. 366, 582 P.2d 957] (conc. and dis. opn. of Bird, C. J.).)

The guidelines suggested by the majority for distinguishing between those facts pertinent to an informant's reliability which are "immaterial" because they merely provide "predictable details" (maj. opn., *ante*, at p. 394) and those facts which "bear adversely on the informant's probable accuracy *in the particular case*" (*id.*, at p. 395, italics in original), will also be a source of confusion for the police who must conform their practices to the law. Isn't it better policy to announce a rule which simply cautions the police to include rather than exclude facts when in doubt?

The effect of the majority's rule will be to encourage the police to withhold from the magistrate relevant facts adverse to the warrant application. If the police exclude relevant information in the reasonable but mistaken belief that it is immaterial as "predictable details of the

informer's criminal past" (maj. opn., *ante*, at p. 394), there is no appellate review. What is even more disturbing is that if the police "unreasonably" withhold relevant information, the majority would apply the deferential "substantial evidence" test and uphold the warrant if a reasonable magistrate *could* have decided to issue a warrant *if* he had all the information before him. (*Id.*, at p. 388, and fn. 6.) Thus, the majority would allow a warrant to stand even though the affidavit on which it was based was *"substantially misleading"* (*id.*, at p. 385, italics in original), unless the "unreasonably" withheld facts would have *necessarily precluded* a finding of probable cause.[2] The legal fictions of such a rule are too far removed from reality to be indulged in at the expense of the Fourth Amendment. Under this scheme, there will never be any informed weighing of all the relevant facts known to the police by a neutral and detached magistrate, as the Constitutions of this nation and this state require.

The majority opinion does provide that a warrant must be quashed if the affiant "intentionally omits any fact for the purpose of deceiving the magistrate or recklessly disregards the accuracy and completeness of the affidavit. . . ." (Maj. opn., *ante*, at p. 390.) However, this is an illusory remedy since establishing proof of a specific intent to deceive the magistrate "would indeed be a difficult burden to sustain." (*People* v. *Cook, supra*, 22 Cal.3d at p. 91.) The difficulty of proof is compounded when dealing with omissions rather than misstatements because the former are more readily susceptible to plausible justification.

The Constitution entrusts to an independent and fully informed magistrate the duty of determining when a citizen's right to privacy must reasonably yield to the state's interest in searching for evidence of a crime. In its decision today, the majority lose sight of the fundamental principle that this duty is not delegable to the police, regardless of how reasonably they might exercise it.

---

[2] The majority opinion confuses the dissent's position on the issue of material omissions and the role of the reviewing court.

The majority err when they set up a system which requires a reviewing court to defer to nonexistent findings of fact about the reliability of an informant. The problem with their thesis is that it is *impossible* for a reviewing court to know what inferences a magistrate would have drawn if he or she had been fully informed. The magistrate might have determined that probable cause existed even with the omitted facts. However, the magistrate might have decided that if all the facts had been included, the application for the warrant was not sufficient. In treating these two situations as if they were identical, the majority require a reviewing court to automatically uphold a warrant even though the magistrate would have found probable cause did not exist if all the facts had been fully disclosed.

In the present case, I agree with the trial court's finding that "material information was not disclosed to the Court in the Affidavit which might have caused the Court to conclude differently in respect to the credibility of the confidential informant." Accordingly, I would affirm the trial court's order suppressing the evidence and dismissing the action.

Respondent's petition for a rehearing was denied December 17, 1980. Bird, C. J., was of the opinion that the petition should be granted.