[Crim. No. 17004. Fourth Dist., Div. Three. Aug. 19, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ALLAN COBB, Defendant and Appellant.

**COUNSEL**

Roger Jon Diamond and Hecht, Diamond & Greenfield for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Peter

Quon, Jr., and J. Richard Haden, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—Defendant David Allan Cobb (Cobb) entered a plea of guilty to one count of possession of cocaine for sale (Health and Saf. Code, § 11351) following a denial of his motion to quash and traverse a search warrant (Pen. Code, § 1538.5, subd. (a)(2)).

The search of Cobb's Fullerton home, forming the basis for this appeal, began with the arrest of Charles Baublit in Riverside County. Baublit was charged with selling drugs, and in the expectation of leniency, chose to work with the Riverside authorities in apprehending fellow drug dealers.[1] Baublit was of little help to the police but he recruited his friend Lester Looney, and soon Looney was working for the police on behalf of Baublit.[2]

Detective McAuley and Deputy District Attorney Hinman, both from Riverside, prepared an affidavit for search warrant based almost entirely upon information supplied by Looney. The affidavit sought to search Cobb's residence for *documents* tending to establish he was a member of a cocaine ring. It further alleged a belief such documents would be found in Cobb's Fullerton home.

The affidavit signed by McAuley provided the following details:

1) Looney, in early February, met Fred Silva and "Tom" at Silva's Riverside home. Tom, Silva, "Herc" and Looney all drove to a house in Fullerton where Silva and Herc obtained a canvas bag. The group drove to a body shop in Chino where Silva displayed a plastic bag containing a white powder. Silva told Looney it was cocaine.

2) The next day Looney drove to Fullerton with a narcotics agent and identified the house. Investigation determined it belonged to Cobb.

3) The following day Looney saw Silva with three ounces of cocaine at the Riverside residence. The police placed the house under surveillance and saw a silver Corvette arrive.

---

[1] It was agreed his charges would be reduced to misdemeanors.

[2] The arrangement among the Riverside police, Riverside District Attorney, and Baublit required Looney to assist the police as a condition of Baublit's plea bargain.

4) On the succeeding day Looney told McAuley that Silva and Herc intended to travel to Orange County to purchase one-half to one pound of cocaine.

5) Nine days later Looney again saw cocaine and amphetamines at Silva's residence. He informed McAuley the owner of a Corvette told Silva he wanted to bring Silva three pounds of cocaine to be cut into one-ounce baggies.

6) Three days later Looney saw "Dave" at Silva's house driving a black Porsche. Dave had 12 one-half pound baggies of cocaine in his possession.

7) Looney was shown Cobb's photograph one week later. He identified the photograph as Dave.

Apart from the information provided by Looney, McAuley included in the affidavit four other instances to establish Looney's reliability. It was alleged Looney had identified: (1) a marijuana seller and had made a purchase (nothing was suggested this was in any way corroborated); (2) a cocaine seller from whom police later made a confirming purchase; (3) an amphetamine seller (no corroboration); and (4) a second amphetamine seller (corroborated).

Not included in the affidavit was information, negative in character, regarding Looney's background. Omitted were Looney's two prior felony convictions, current probationary status and his reason for his assisting the police.

Looney, McAuley, and Deputy District Attorney Hinman testified at the motion to suppress evidence. McAuley was aware at the time he prepared and signed the affidavit, Looney was a twice convicted felon and Looney's sole motivation in assisting the police was to help Baublit escape prosecution. He omitted this information to keep Looney's identity confidential,[3] and because it was the *policy* of the Riverside District Attorney, as taught to Riverside police in search warrant classes, not to include background information on informants in affidavits for search warrants. He admitted he never had placed such information in an affidavit.

Hinman testified he supervised the preparation of the search warrant for Cobb's residence. He was aware of the agreement among Baublit, Looney,

---

[3]Although it was posited the reason was to keep Looney's identity confidential, we note the informant, without court order, testified for the People at both the preliminary examination and motion to suppress.

and the police, including Looney's mandatory participation. Hinman admitted he taught search warrant practice to police officers. He told his students to omit informant background information from affidavits and followed that policy in neither instructing McAuley to include Looney's background in the affidavit for Cobb's residence nor including the information himself.

The search warrant for Cobb's house was served March 4, 1982. Police forced open a safe and discovered large quantities of cocaine and cash. No documents were discovered.

 Unquestionably, the information omitted from the Cobb search warrant affidavit was material. In *People* v. *Kurland* (1980) 28 Cal.3d 376 [168 Cal.Rptr. 667, 618 P.2d 213], the Supreme Court determined agreements between the police and the informant must be included in an affidavit since "A misinforming affidavit hinders the magistrate's inference-drawing powers and increases the likelihood that privacy will be invaded without probable cause." (*Id.*, at p. 383.) We can find no justification, as did the trial court, to distinguish between a motivation to mitigate the informant's difficulties as opposed to the informant's friend. Looney testified, and the authorities were aware, his sole motivation was to help Baublit. This motivation can be no less compelling than had Looney himself been attempting to escape criminal liability.

 *Kurland* states once the materiality of the omission is established, defendant's remedy is governed by the culpability of the affiant. Where the omission was negligent, the procedure is to add the information and retest. Where the omission is intentional or reckless, the warrant is quashed. (*Id.*, at pp. 386-387.)[4]

 We conclude the policy of the Riverside District Attorney, as carried out by its deputies and reinforced in the instruction of law enforcement,[5] omitting negative background information on an informant, constitutes reckless conduct which must result in the quashing of this search warrant.[6] "*Cook* expressly reaffirmed the 'rule of reason,' holding that the exclusionary doctrine developed in *Theodor* is intended, by deterring unlaw-

---

[4]Respondent asserts, relying upon the truth in evidence provision of Proposition 8 (art. I, § 28, subd. (d)), the federal rule compels an add and retest approach notwithstanding an intentional or reckless omission. (*Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674].) Proposition 8 is not to be applied retroactively to crimes committed before its effective date. (*People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149].)

[5]Hinman testified he alone had helped prepare over 500 search warrants.

[6]We therefore do not reach the additional issues raised by defendant.

ful police conduct, to minimize the risk that innocent privacy will be invaded. Once unlawful conduct is shown, *Cook* explained, the scope of the exclusionary rule will depend on whether the inaccuracy was negligent, on the one hand, or reckless and deliberate on the other." (*People* v. *Kurland, supra,* 28 Cal.3d 376, 386.) A *policy* which deprives a magistrate of material information without reference to the facts set forth in the affidavit or the credibility of the particular informant is by itself reckless, for by definition it is not a reasoned attempt at the truth. The exclusionary sanction is particularly appropriate to prevent law enforcement from having everything to gain and nothing to lose when adopting a policy which in every case eliminates material, negative information from the magistrate's probable cause determination. (*People* v. *Cook* (1978) 22 Cal.3d 67, 87 [148 Cal.Rptr. 605, 583 P.2d 130].)

The order denying defendant's motion to suppress and judgment are reversed.

Crosby, Acting P. J., and Wallin, J., concurred.