[Crim. No. 10438. Third Dist. Feb. 8, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMY GEORGE ZEPEDA, Defendant and Appellant.

COUNSEL

Thomas C. Hughes, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and Shirley A. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**PARAS, J.**—This appeal follows the guilty plea of defendant Zepeda to burglary (Pen. Code, § 459), after the trial court denied his Penal Code section 1538.5 motion. Defendant sought to suppress evidence taken from his residence pursuant to a search warrant. He challenges the warrant on two grounds, insufficient indicia of reliability to permit reliance on an informant, and execution of the warrant after 10 p.m.

At 6:40 p.m. on October 31, 1978, Officer Arden obtained the warrant from Judge Kim of the San Joaquin County Municipal Court. It was indorsed for night service and specified the residences of Ronald Ted Fuentes (1533 Knickerbocker) and defendant (609 West Acacia) as the places to be searched. A search of both said persons was also authorized.

The warrant was obtained upon Officer Arden's affidavit. The affidavit included a summary of three separate burglaries of Taco Bell

restaurants on the nights of September 4, October 14, and October 26, 1978. The burglaries were similar in that in each a safe was stolen, which had been enclosed in a wood cabinet with concrete poured into it, and the cabinet was torn apart and the concrete broken in order to gain access. Further, a "vibram" type shoeprint was discovered at the last two Taco Bells.

The affidavit also contained a statement of Virginia Fuentes, wife of Ronald Ted Fuentes, who was defendant's codefendant. On October 30, Mrs. Fuentes reported an alleged battery on her by Fuentes, and she also gave incriminating statements concerning burglaries committed by the two men. Her statement included a reference by Fuentes to a September 4 or 5 burglary involving $1,200 or $1,300, an assertion by Fuentes on October 26 that he and defendant just "done another job," a boast by defendant about the Taco Bell burglary of September 4, the fact that Mrs. Fuentes had observed the two men cutting open a safe in her garage, and a description of that safe. Finally, the affidavit indicated that Arden had retrieved a part of the safe from Mrs. Fuentes, which he took to one of the Taco Bell establishments where it was identified by the manager.

Execution of the warrant began at the Fuentes' house (1533 Knickerbocker) between 8:30 and 9 p.m. This search lasted 30 minutes, after which the officers took 5 minutes to drive to defendant's and Fuentes' place of employment. Three minutes elapsed before the two were located there, and the officers talked to them for five minutes. They all then drove to the police station (seven to ten minutes) where the boots of Fuentes and defendant were taken pursuant to the warrant. Twenty minutes later they all drove to defendant's residence (seven to eight minutes) to execute the warrant there. Officer Arden was not sure whether it was before or after 10 p.m. when they arrived.

I

Defendant's challenge to the reliability of Mrs. Fuentes on the face of the affidavit has no merit. ■ A warrant's supporting affidavit which utilizes information supplied by an informant must contain sufficient facts from which the issuing magistrate can conclude that the informant has reliable information. (*People* v. *Superior Court (Johnson)* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183].) Such reliability may be established by corroboration of factual details pro-

vided. (*People* v. *Smith* (1976) 17 Cal.3d 845, 850 [132 Cal.Rptr. 397, 553 P.2d 557].)

■ We find substantial evidence to support the trial court's implied finding that the information provided by Mrs. Fuentes was sufficiently corroborated to justify issuance of the warrant. (See *People* v. *James* (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135].) Mrs. Fuentes told police of a burglary on September 4 or 5, that involved $1,200 to $1,300. Officer Arden had checked the police files and included in the affidavit the facts of the September 4 burglary of a Taco Bell in which $1,309 had been taken. Further, Mrs. Fuentes told the police that on October 26 Fuentes had come home late and told her that he had just committed another burglary. October 26 was the date of the Manteca Taco Bell burglary. Finally, the informant described a safe that her husband and defendant were cutting in her garage; she turned a portion of the safe over to the police, and it was later identified by the Manteca Taco Bell manager as similar to the one stolen from that restaurant. Mrs. Fuentes' information can thus be considered reliable, given such corroboration in the supporting affidavit.

## II

Defendant next challenges the execution of the warrant at his place of residence at a time he asserts was after 10 p.m. The argument is necessarily twofold. First, defendant contends that the affidavit in support of the warrant did not provide facts giving the issuing magistrate "good cause" to indorse the warrant for night service. (See Pen. Code, § 1533.) Second, the warrant was in fact served after 10 p.m. Therefore, concludes the argument, the evidence seized at defendant's residence must be suppressed.

## A

Upon calculation of the elapsed times between the initial service of the warrant and the final service at defendant's residence, we note that the earliest the warrant could have been served was 9:47 p.m., and the latest 10:21 p.m. Since the trial court denied defendant's section 1538.5 motion there is an implied finding that it was served before 10 p.m. (See *People* v. *Superior Court (Peck)* (1974) 10 Cal.3d 645, 649-650 [111 Cal.Rptr. 565, 517 P.2d 829]; *People* v. *Huff* (1978) 83 Cal.App. 3d 549, 557, fn. 2 [147 Cal.Rptr. 316].) That finding is supported by substantial evidence.

## B

■ Moreover our examination of the warrant and supporting affidavit discloses at least three factors justifying the trial court's implied holding that a night service indorsement was proper.

First, the informant was married to the codefendant. She had reported a battery by her husband which caused her to be in a position to provide the burglary information in the first place. A reasonable inference flows from this fact that it was only a matter of time before Fuentes and defendant themselves would know they were suspects. One day had already passed since Mrs. Fuentes had given the police her information. Clearly then an immediate search was necessary to prevent the potential premature destruction of physical evidence within the control of the defendants.

Second, the defendants had possession of at least $1,300 from the September 4 burglary. The possibility of the existence of more stolen money from the other two burglaries is not negated by the affidavit and is certainly a permissible inference. It is also permissible to reason that money is a "perishable" stolen good that will be consumed much faster once the suspect knows he is a suspect. As we noted in *In re Donald R.* (1978) 85 Cal.App.3d 23, 26 [149 Cal.Rptr. 152], "'not only are the People of the state...entitled to have some of the evidence of what was taken in the burglary,...they are also entitled to have as much of the evidence as possible....'" That is as true for stolen money as for stolen food, liquor and cigarettes. Thus the existence of stolen money in this case is another factor suggesting good cause for an immediate night search.

Finally, the warrant was issued at 6:40 p.m. The issuing magistrate can certainly infer from this that an immediate search is contemplated. The warrant specifically authorizes the search of two separate personal residences and two separate individuals. The total search obviously will consume some appreciable time. In addition, the issuing magistrate can infer from the affidavit, taken as a whole, that once any part of the search is actually under way, both defendants will be on notice that they are suspects. Therefore, the search cannot stop if it is not concluded before 10 p.m., without exacerbating the risk of destruction of physical evidence relating to the crime. Time of issuance thus becomes a factor in determining good cause for nighttime indorsement.

Given the three factors isolated above, it becomes abundantly clear that "'the affidavit, read in a commonsense manner and as a whole reasonably supports the inference that the interests of justice are best served by the authorization of nighttime service,...' (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 35 [121 Cal.Rptr. 269])." (*In re Donald R., supra*, 85 Cal.App.3d at p. 26.) We find no abuse of discretion in the magistrate's implied finding that nighttime service was a reasonable necessity. (*Ibid.*)

## C

█ We have also concluded, in the alternative, that this warrant was *executed* in a single continuous transaction which began between 8:30 and 9 p.m., thus it was not a night search at all. The initial premise for this conclusion is that any other interpretation leads to absurd results, both in this case and in any later case involving multiple residences of multiple defendants. Our underlying analysis is twofold.

First, once the warrant was issued, it was reasonable for the officers to execute it as soon as possible. Once that execution began, it was unreasonable to require its cessation merely because the hour reached 10 p.m. Once the Fuentes' residence was searched and Fuentes and defendant were confronted at their place of work, police prudence dictated that the defendant's residence be searched as immediately thereafter as possible. If it were not done that night, defendant could easily have frustrated any later search.

Second, the defendant himself was personally served with the warrant before 10 p.m. at his place of work. In addition to putting him on notice that he was a suspect and that his residence was to be searched, this fact also fulfilled the privacy interest guarded by section 1533. (See *Tidwell* v. *Superior Court* (1971) 17 Cal.App.3d 780, 786-787 [95 Cal.Rptr. 213].) The "intrusion" into defendant's privacy began well before 10 p.m., the time which section 1533 isolates as that which makes such intrusions subject to the additional "good cause" requirement. Therefore, defendant may not complain, since the principle of section 1533 was not violated. The conclusion is obvious; the warrant was actually served when the search began, and certainly no later than when the warrant was presented to defendant at his workplace.

We hold that a search warrant is not invalidly executed pursuant to section 1533 when its execution is a part of one continuous transaction which begins before 10 p.m. and continues after that hour.

The judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.