132 Cal.App.3d 878 (1982)
183 Cal. Rptr. 480
THE PEOPLE, Plaintiff and Respondent,
v.
DALE EDWARD CLETCHER, Defendant and Appellant.
Docket No. 40727.
Court of Appeals of California, Second District, Division One.
June 16, 1982.
*879 COUNSEL
Laura Goldin, under appointment by the Court of Appeal, for Defendant and Appellant.
*880 George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Roy C. Preminger and Robert D. Breton, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
LILLIE, J.
Defendant appeals from a judgment entered on his plea of nolo contendere (receiving stolen property) subsequent to denial of his motion to suppress evidence. The sole appellate issue is whether the affidavit in support of the search warrant sets up sufficient facts to establish good cause for nighttime service.
The following facts were recited in the affidavit of Deputy O'Reilly. On January 28, 1979, and at subsequent times, approximately $10,450 worth of ancient art pieces was stolen from the residence of Anthony Brackney in Goleta. At all said times defendant also lived in Brackney's home. One of the stolen items was a "one-of-a-kind" pre-Columbian mummy mask. On November 5, 1979, after defendant moved from the Brackney residence, he (Deputy O'Reilly) contacted defendant at his new residence, an apartment in Santa Barbara, and interviewed him concerning the thefts; defendant denied any knowledge of or involvement in the crimes.
About 6:30 p.m. on February 5, 1981, Brackney went to defendant's apartment to talk to him about a tennis match that defendant had missed several weeks earlier; he parked his car on the street and walked down the driveway on the south side of the building to use the rear entrance as he knew defendant's apartment would be in the rear of the building; as he approached the top of the stairs outside of defendant's apartment, Brackney glanced through an open window and saw his stolen pre-Columbian mummy mask on a bookcase shelf against the east wall of defendant's apartment; he was on a stairway and hallway area of the building which allows access to all apartments on the ground floor. When Brackney observed his art piece he made no contact with defendant and instead left and contacted Deputy O'Reilly at 8 p.m. and informed him of what he had observed.[1] Based upon the foregoing facts *881 Brackney related to him, the deputy asserted in his affidavit that he believed that stolen property belonging to Brackney was in defendant's apartment; and that he felt "there is a possibility that Brackney was seen by Cletcher and that Cletcher may attempt to dispose of or conceal the stolen property if it is not immediately seized."
At 8:30 p.m. Deputy O'Reilly commenced preparation of the affidavit and search warrant; thereafter he had to locate and consulted with a deputy district attorney concerning the warrant; he then had to locate the magistrate (Judge Slater) and took the documents to him where he swore to and subscribed the affidavit in the presence of the magistrate at 12:05 a.m. on February 6, and the search warrant was issued. The magistrate found good cause for nighttime service (§ 1533, Pen. Code) and directed that the search warrant could be served "at any time of the day or night."
Relying on People v. Watson (1977) 75 Cal. App.3d 592 [142 Cal. Rptr. 245] appellant contends that the affidavit failed to establish good cause for nighttime service in that the language of Deputy O'Reilly's allegation[2] is but his conclusion unsupported by specific facts. Based on the premise that Brackney did not see, hear or have any sense of defendant's presence in the apartment, appellant also argues that the allegation is false and must be stricken. (Theodor v. Superior Court (1972) 8 Cal.3d 77 [104 Cal. Rptr. 226, 501 P.2d 234]; People v. Cook (1978) 22 Cal.3d 67 [148 Cal. Rptr. 605, 583 P.2d 130].)
In People v. Watson, supra, 75 Cal. App.3d 592, the magistrate indorsed the search warrant for nighttime service simply on the basis of a police officer's unsworn oral statement that the defendant did not get *882 home until late at night, "6:00 p.m. or after," and was not always present at his home. The affidavit executed by the officer showed probable cause to believe the defendant was in possession of marijuana at his residence and a sale had been made there several days before, but did not specify whether it had been made during the day or night. No reason why the warrant could not be served after 6 p.m. and before 10 p.m. was shown. The court held that the affidavit must set forth specific facts which show a necessity for service of the warrant at night rather than between the hours of 7 a.m. and 10 p.m. "This means that the magistrate must be informed of facts from which it reasonably may be concluded that the contraband to be seized will not be in the place to be searched during the hours of 7 a.m. to 10 p.m." (People v. Watson (1977) 75 Cal. App.3d 592, 598 [142 Cal. Rptr. 245]; In re Donald R. (1978) 85 Cal. App.3d 23, 26 [149 Cal. Rptr. 152].)
(1a) Although here a separate averment regarding the necessity for nighttime service was made by Deputy O'Reilly, section 1533, Penal Code[3] does not require a separate statement of good cause for nighttime service. (People v. McCarter (1981) 117 Cal. App.3d 894, 907 [173 Cal. Rptr. 188]; People v. Mardian (1975) 47 Cal. App.3d 16, 35 [121 Cal. Rptr. 269]; People v. Walker (1967) 250 Cal. App.2d 214, 219 [58 Cal. Rptr. 495].) "If an affidavit, read in a common sense manner and as a whole, reasonably supports the inference that the interests of justice are best served by the authorization of nighttime service, provision for such service in a warrant is proper." (People v. McCarter, supra, 117 Cal. App.3d 894, 906-907.) This standard has not been changed by People v. Watson, supra, 75 Cal. App.3d 592, as urged by appellant, as is evident in subsequent cases such as People v. McCarter, supra, 117 Cal. App.3d 894, 906-907; People v. Zepeda (1980) 102 Cal. App.3d 1, 6-7 [162 Cal. Rptr. 143]; Nunes v. Superior Court (1980) 100 Cal. App.3d 915, 938 [161 Cal. Rptr. 351]; People v. Arno (1979) 90 Cal. App.3d 505, 560 [153 Cal. Rptr. 624]; In re Donald R. (1978) 85 Cal. App.3d 23, 26 [149 Cal. Rptr. 152]; People v. Mardian (1975) 47 Cal. App.3d 16, 35 [121 Cal. Rptr. 269]. (2) Absent an abuse of discretion the magistrate's finding of reasonable necessity for nighttime service will not be disturbed on appeal. (People v. McCarter (1981) 117 *883 Cal. App.3d 904, 906 [173 Cal. Rptr. 188]; Nunes v. Superior Court, supra, 100 Cal. App.3d 915, 938.)
(1b) It is our view that the affidavit read in a commonsense manner and as a whole contains sufficient facts and inferences from which the magistrate could reasonably conclude that the interests of justice were best served by the authorization of nighttime service. (People v. McCarter, supra, 117 Cal. App.3d 894, 906-907 [to prevent a "contemplated" murder]; People v. Zepeda, supra, 102 Cal. App.3d 1, 6-7 ["to prevent the potential premature destruction" of stolen money]; Nunes v. Superior Court, supra, 100 Cal. App.3d 915, 938 ["stolen motorcycle parts might be sold or removed"]; People v. Flores (1979) 100 Cal. App.3d 221, 234 [160 Cal. Rptr. 839] ["to prevent removal of [narcotics] by possible accomplices"]; In re Donald R., supra, 85 Cal. App.3d 23, 26 ["distinct possibility that the [stolen property] might disappear by the next morning"]; People v. Mardian, supra, 47 Cal. App.3d 16, 35 ["inference that contraband is soon to be removed"].) In In re Donald R. (1978) 85 Cal. App.3d 23 [149 Cal. Rptr. 152], the court distinguished People v. Watson (1977) 75 Cal. App.3d 592 [142 Cal. Rptr. 245] "because of the distinct possibility that the evidence might disappear by the next morning" (p. 26; italics added), as did the court in Nunes v. Superior Court (1980) 100 Cal. App.3d 915 [161 Cal. Rptr. 351], "Unlike Watson, however, the officer in this case recounted facts tending to suggest that stolen motorcycle parts might be sold or removed from the subject premises." (P. 938; italics added.)
The magistrate reasonably could read the affidavit in support of the search warrant in this light: Defendant knew of the thefts and previously had been questioned concerning them by Deputy O'Reilly; at that time no stolen items were observed in defendant's apartment; over a year later defendant felt safe enough to keep the stolen art pieces in his apartment in Santa Barbara some distance from Brackney's home in Goleta. When Brackney went to the apartment he parked his car on the street and walked down the driveway on the south side of the building to the rear; he walked in a common hallway area and up stairs which allowed access to other apartments exposing his presence to the view of other occupants of the apartment house and to defendant especially when at top of the stairs Brackney stopped, leaned over and looked into defendant's apartment through the window. It was dark outside (6:30 p.m., Feb. 5) but night lights were on in and about the premises and a *884 light was on in defendant's apartment. From the time of evening and the light in defendant's apartment the inference is reasonable that defendant had recently turned on the light and was inside. From the moment he got out of his car on the street to the time he returned to his vehicle and drove away, Brackney readily could have been seen by others in the building and by defendant himself. If Brackney was seen by defendant or if defendant was told of his presence by neighbors, and Brackney walked away from his door without contacting him, defendant well could believe that Brackney saw the stolen mask through the window and went to the police. Brackney's stolen art pieces had been secreted for over two years; they were secreted when Deputy O'Reilly went to defendant's apartment to investigate the thefts; defendant having denied any knowledge or involvement in the crimes and Deputy O'Reilly not having observed any art pieces in defendant's apartment at that time, the deputy did not pursue the matter in relation to defendant; after the passage of a year and a half and defendant felt he was no longer a suspect, he was bold enough to display them in his apartment. Given the foregoing, the inference is strong that once having secreted the stolen articles to avoid detection when questioned by the deputies, defendant would do so again that night if he had any inkling from knowledge of Brackney's presence in his apartment house that he was again a suspect. As the court stated in People v. Zepeda, 102 Cal. App.3d 1, 6 [162 Cal. Rptr. 143], "It is also permissible to reason that money is a `perishable' stolen good that will be consumed much faster once the suspect knows he is a suspect." (Italics added.) The indorsement on the warrant for nighttime service was well within the discretion of the magistrate.
As stated by the juvenile court and adopted by this court in In re Donald R. (1978) 85 Cal. App.3d 23, 26 [149 Cal. Rptr. 152], "`not only are the People of the state ... entitled to have some of the evidence of what was taken in the burglary, ... they are also entitled to have as much of the evidence as possible....' (Italics added.)" (Fn. omitted.)
Likewise there is no merit in appellant's contention that inasmuch as Brackney did not see, hear or have any sense of defendant's presence in the apartment, Deputy O'Reilly's averment that "there is a possibility that Brackney was seen by Cletcher" is false and must be stricken. First, Deputy O'Reilly merely alleged that he "feels" there is a possibility that Brackney was seen by defendant and second, the fact that the *885 victim did not see or hear defendant in his apartment does not preclude the "possibility" that he was seen by defendant.
The judgment is affirmed.
Spencer, P.J., and Cooperman, J.,[*] concurred.
A petition for a rehearing was denied July 13, 1982, and appellant's petition for a hearing by the Supreme Court was denied August 11, 1982.
NOTES
[1] Brackney's testimony disclosed that defendant rented a room in his house for about a year and one-half; they played tennis and defendant did not appear for a match; he tried to call defendant but the phone was out of order and after several other attempts to call him decided to stop by to "see if he's okay"; he could see through the loosely woven bamboo blinds into defendant's apartment; he leaned over "a few inches" to see clearly and observed the stolen mask; there was a light in the apartment; night lights were in and around the apartment house; he went to the police then was interviewed by the sheriff's deputies; he went with the deputies to execute the warrant; defendant was present when the warrant was executed and between 15 and 20 of Brackney's stolen items were found in defendant's apartment; these items "were taken on a number of occasions" from Brackney's home and each time Brackney reported the theft to the sheriff's office as a burglary; at all of these times defendant lived in Brackney's home. Deputy O'Reilly testified that he and others executed the warrant; after knocking on the door of defendant's apartment and not being allowed to enter, they forced entry into the residence; they found in the apartment on display and in a bedroom closet the stolen items.
[2] "Your affiant also feels there is a possibility that Brackney was seen by Cletcher and that Cletcher may attempt to dispose of or conceal the stolen property if it is not immediately seized."
[3] "Upon a showing of good cause, the magistrate may, in his discretion, insert a direction in a search warrant that it may be served at any time of the day or night. In the absence of such a direction, the warrant shall be served only between the hours of 7 o'clock a.m. and 10 o'clock p.m."
[*] Assigned by the Chairperson of the Judicial Council.