[Nos. F002620, F002714, F003146. Fifth Dist. Oct. 10, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL ANTHONY LOPEZ et al., Defendants and Appellants.

COUNSEL

Hugh B. Fielder, Victor J. Wahl, John W. Amos II and Frank O. Bell, Jr., State Public Defender, under appointments by the Court of Appeal, and Christine Zilius, Deputy State Public Defender, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Eddie T. Keller, Raymond L. Brosterhous II, W. Scott Thorpe and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RITCHEY, J.*—The present case represents the consolidated appeals of four defendants: Billy Kenneth Turner, Mark Anthony Hinojos, Michael Miguel Renteria, and Paul Anthony Lopez.

In an information filed in Tulare County Superior Court in March 1983, defendants Turner and Hinojos were charged with multiple violations of the Penal Code:[1] count I, section 211 (robbery); count II, section 459 (burglary). It was also alleged that during the commission and attempted commission of these offenses, defendants were armed within the meaning of section 12022, subdivision (a). In the third count of this information, Turner was additionally charged with violation of Vehicle Code section 10851 (unlawful driving or taking of a vehicle).

---

*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise indicated.

Two other informations were filed in Tulare County Superior Court that same month. In one of these, Renteria was charged with violation of section 213.5 (robbery of an inhabited dwelling) in count I. Count II charged him with violation of section 459. As with Turner and Hinojos, it was further alleged in this information that Renteria was armed within the meaning of section 12022, subdivision (a). In the other information, Lopez was charged in count I with violation of section 459, and in count II with violation of section 211. Each defendant was arraigned and pled not guilty. In April, Turner filed a motion, joined in by Renteria and Lopez, to suppress evidence or return evidence pursuant to section 1538.5. A similar, separate motion was made by Hinojos.

All parties ultimately agreed the preliminary hearing transcript of February 25, 1983, should be considered in deciding the issues presented in their suppression motions. This preliminary hearing involved only defendants Turner, Hinojos, and Renteria. Although Lopez had a separate preliminary hearing, he stipulated at his suppression hearing that the preliminary hearing of the other defendants be used in deciding the merits of his motion. Also to be used in deciding his motion was the testimony of Detective Hardin, the affiant, taken at Lopez' suppression hearing. Hinojos had a separate suppression hearing. However, no mention was made of Hardin's testimony of April 19, 1983, at Hinojos' suppression motion. Further, Hardin did not testify at this hearing.

These motions were denied. Subsequently, all defendants withdrew their pleas and pled guilty to some or all of the charges against them. Turner pled guilty to robbery, taking and driving an automobile, and admitted the arming allegation. Hinojos pled guilty to burglary. Renteria pled guilty to robbery of an inhabited dwelling and admitted being armed. In exchange for his promise to testify truthfully against his codefendants, Lopez was allowed to plead guilty to burglary. The charge was reduced to a misdemeanor pursuant to section 17, subdivision (b). They timely appeal their convictions.

## FACTS

Because this case presents appeals of the denial of suppression motions, the facts surrounding the crimes for which defendants are charged will be recounted only briefly.

The statement in support of probable cause, the affidavit, the search warrant, and police reports attached to the affidavit, were exhibits at both suppression hearings. The facts will therefore be those taken from those documents and the preliminary hearing transcript of February 25, 1983.

The additional testimony of Officer Hardin taken at the suppression hearing of April 19, 1983, will be used in analyzing the issues presented by all defendants except Hinojos.

During the evening of January 10, 1983, three masked men broke into the home of Mr. and Mrs. Harvey Lauritzen. The Lauritzens were bound and their heads were covered so they could not see what the men were doing. One of the men carried a shotgun, another carried a stick.

The men asked where the jewelry, money and guns were kept. For approximately an hour, the men were in the house. The Lauritzens heard them rummaging about. Jewelry was removed from both Mr. and Mrs. Lauritzen. The men asked for the car keys. Mr. Lauritzen later heard what he believed to be the sound of his cars being started. After the men left, Mr. Lauritzen untied himself and his wife. They went to a neighbor's house and called the sheriff.

It was later determined that one of their vehicles was missing. Jewelry, cash, firearms, appliances and other miscellaneous items had also been taken.

On January 20, 1983, a statement of probable cause was filed in the Municipal Court for the Tulare-Pixley Judicial District by Detective Hardin. He stated he had been investigating the robbery at the Lauritzens' home and that he had received information about the robbery from a confidential informant who had visited Turner's residence on two occasions. The informant was in the custody of the sheriff's department at the time Hardin interviewed him.

According to the detective, Turner told the informant he and three others were involved: one stood watch while he and two others carried out the actual robbery. The informant also told Hardin that Turner showed him a diamond ring and leather carrying case used for carrying liquor. The case held a mixing cup and a bottle of Jack Daniels. The ring was described as a large ring with one large diamond in the center, surrounded by eight smaller diamonds. The ring and case were similar to those reported stolen during the Lauritzen robbery. The informant said he was shown these items at Turner's residence.

The informant was shown a picture of the stolen ring. He identified it as being the one he saw in Turner's possession on both visits. Hardin contacted Mrs. Lauritzen who informed him that *one of three bottles* in the liquor case at the time it was stolen was either Early Times or Jack Daniels.

It was requested by Hardin that the warrant additionally authorize night-time service. The basis for this request was fear the property would be disposed of through sale or transfer.

Turner's home was searched on January 21, 1983, at 6 a.m. Items from the Lauritzen robbery were recovered. Turner made statements incriminating himself and all other defendants. As the other defendants were contacted, additional incriminating statements were made.

Omissions from and misstatements in the statement of probable cause became apparent from Hardin's testimony at the preliminary hearing. Those argued on appeal as a basis for reversing the denial of defendants' section 1538.5 motions are as follows: The informant was not only in custody, but criminal charges were pending against him. Hardin told the informant there was a possibility the felony charges would be dropped if he cooperated. The informant was unable to provide Hardin with Turner's street address.

At the suppression hearing held on April 19, 1983, Hardin testified he omitted the information about possible dismissal of charges in exchange for cooperation because he did not believe this fact to be important. He also did not think knowledge of this fact would influence the magistrate. He did not believe the fact was intentionally omitted.

I. OMISSIONS AND MISSTATEMENTS

Article I, section 28, subdivision (d) of the California Constitution (hereafter Prop. 8) is applicable to crimes occurring after its effective date of June 8, 1982. (*People* v. *Smith* (1983) 34 Cal.3d 251, 258 [193 Cal.Rptr. 692, 667 P.2d 149].) Pursuant to Prop. 8, evidence may be excluded by the court under the California Constitution only to the extent exclusion is also required by the federal exclusionary rule which applies to evidence seized in violation of the Fourth Amendment. (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].) The crimes in the instant case occurred considerably after the effective date of Prop. 8.

Turner argues the court erred when denying his section 1538.5 motion to suppress evidence obtained during execution of the search warrant. Specifically he claims a material omission was made which requires reversal, whether made intentionally or negligently. The omitted information was that Hardin told the informant charges might be dropped against him if he cooperated. Turner also claims a material misstatement was recklessly or knowingly made. The misstatement was Hardin's allegation in the statement of probable cause that the informant had given him Turner's street address.

Prior to determining whether reversal is required under federal constitutional standards, the difference between California and federal constitutional law as it existed prior to the passage of Prop. 8 will first be clarified due to Turner's reliance upon California cases predating the effective date of the proposition.

■ Under federal constitutional standards, as set forth by the United States Supreme Court, the presence of a deliberately made falsehood or a falsehood made with reckless disregard for the truth on the part of the affiant in seeking to establish probable cause for issuance of a warrant does not require the warrant be automatically quashed and the evidence suppressed. Instead, the falsity or reckless disregard is excised from the affidavit. The content of the affidavit is then retested to determine if it contains sufficient information to support a finding of probable cause. (*Franks* v. *Delaware* (1978) 438 U.S. 154, 171-172 [57 L.Ed.2d 667, 681-682, 98 S.Ct. 2674].) Under *Franks,* if the falsehood is made negligently, no challenge is available. (*People* v. *Cook* (1978) 22 Cal.3d 67, 88 [148 Cal.Rptr. 605, 583 P.2d 130].)

The California Supreme Court recognized, but rejected, the *Franks* test when it established the test for the California Constitution. It chose, instead, a rule affording defendants more protection under the state Constitution than available under the rule of *Franks* and the federal Constitution. (*People* v. *Cook, supra,* 22 Cal.3d at p. 88.)

■ California law distinguishes between an omission and a misstatement. (*People* v. *Kurland* (1980) 28 Cal.3d 376, 387 [168 Cal.Rptr. 667, 618 P.2d 213].) A knowingly false statement of fact, knowing false allegation, or deliberate lie, require the warrant be automatically quashed and the evidence suppressed. (*People* v. *Cook, supra,* 22 Cal.3d at p. 89.) Also, where the misstatements are made with either a specific intent to deceive the magistrate or are knowingly made by the affiant, the same result is reached. (*People* v. *Cook, supra,* 22 Cal.3d at pp. 87-88, 91.) The defendant has the burden of producing evidence and the ultimate burden of proof on the issue. (*Id.,* at pp. 89-92.) This test additionally applies to recklessly made falsehoods. Negligent misstatements are excised from the affidavit, which is then retested to determine if the remaining statements are sufficient for the magistrate to have found probable cause existed. (*People* v. *Cook, supra,* 22 Cal.3d at pp. 84-87, as stated in *People* v. *Kurland, supra,* 28 Cal.3d at p. 386.)

In the case of an omission, it must first be determined if the omission is material. A material fact is one which, if omitted, "would make the affidavit *substantially misleading.*" (*People* v. *Kurland, supra,* 28 Cal.3d at p. 385,

italics original.) Omissions made intentionally are not necessarily made to mislead the magistrate. If all omissions are immaterial, the central question remaining is whether the affidavit on its face supports a finding of probable cause since only material omissions can render the affidavit inaccurate. (*People* v. *Kurland, supra,* 28 Cal.3d at p. 387.)

If the omission is material, the court then decides if it was omitted through innocent or culpable conduct on the part of the affiant. (*Ibid.*) Under this test, the court must decide if the material omission was reasonable, negligent, or recklessly inaccurate or intentionally misleading. (*Id.,* at pp. 387-388.)

The burden of proof in the case of omissions has been stated as follows: "The burden on the issues of materiality, privilege, and affiant's culpability is to be allocated as in the case of misstatements. If the defense states 'with some specificity' its reasons for believing that material facts were omitted, it may try to show such omissions and their materiality. The obligation of showing that material omissions were proper or reasonable rests with the People, but defendant has the burden of demonstrating recklessness or intent to mislead. (See *Cook, supra,* 22 Cal.3d at pp. 89-92; *Theodor, supra,* 8 Cal.3d at p. 102 [104 Cal.Rptr. 226, 501 P.2d 234].)" (*People* v. *Kurland, supra,* 28 Cal.3d at p. 390.)

Material omissions, reasonably made, result in no sanction being imposed by the court. (*Id.,* at p. 388.) Material omissions negligently made result in a retesting of the affidavit after the omissions are added to its content. (*Id.,* at p. 388.) Reckless omissions or omissions intentionally made for the purpose of deceiving the magistrate result in the warrant being quashed, whether or not they are material. Materiality is a question of law. (*Id.,* at p. 392, fn. 10.)

In the present case, the magistrate was put on notice in the statement of probable cause that the informant was in the sheriff's custody. This fact alone was sufficient to warn the magistrate that a typical citizen-informant situation was not at hand. The information the informant provided was therefore suspect on its face. "Both an issuing magistrate and a reviewing court must initially assume that information from such sources is unreliable for purposes of probable cause. Such a rule alerts the magistrate to the very danger defendant urges—that the statements of tipsters from 'criminal society' may receive unwarranted weight." (*Id.,* at pp. 393-394.) The additional fact the informant had been told there was a possibility charges would be dismissed would only have been surplusage. Hardin acted reasonably in omitting this fact.

Further, any suspicion surrounding the informant's information was overcome by the substantial corroboration provided by his detailed description of the stolen items. (*Id.*, at pp. 392, 394.) One of these details, the name on the label of the bottle in the case, was not even known to Hardin until he later interviewed one of the victims. Hardin said that he described no property to the informant prior to receiving the informant's description.

The same result would be reached under *Kurland* if the omission was negligent: Even if this fact was added back to the affidavit in statement of probable cause, sufficient probable cause still existed to warrant a finding of probable cause. (*Id.*, at p. 388.)

Under federal law and the *Franks* decision, which are applicable to this case, no challenge is available in the case of negligent omissions. Additionally, even if treated as reckless omissions or omissions intended to deceive the magistrate, reversal is not required. As previously discussed, with the omissions added back and the affidavit retested, sufficient information still existed to support a finding of probable cause.

■ The alleged misstatement, that the informant provided a street address, does not appear to have been made with reckless disregard for the truth. At worst, Hardin was mistaken and negligently included this allegation. As he later testified at the preliminary hearing, the informant did say that he observed the liquor carrying case and ring *at* Turner's residence on two occasions.

It seems inconceivable, under these facts, that Hardin intended in any way to deceive the magistrate, or that he recklessly disregarded the truth: Hardin made it clear in the statement of probable cause that he also procured Turner's street address from another source, and the informant placed the stolen property at Turner's residence. Hardin was probably just negligent when he reconstructed the facts and attributed this information to the informant as well.

Under California law prior to Prop. 8, negligent misstatements, unlike intentional ones, are excised from the affidavit and it is then retested for probable cause. (*People* v. *Cook, supra,* 22 Cal.3d at pp. 84-85.) Excising the negligent misstatements from the affidavit, sufficient evidence remains to warrant a finding of probable cause. (*Ibid.*)

Under *Franks,* as previously noted, negligent misstatements may not be challenged.

## II. Nighttime Search

Turner urges reversal on the grounds that issuance of a warrant authorizing a nighttime search was unjustified. Hardin stated the following reasons for the necessity of a warrant which could also be served at night: "Your affiant further requests this warrant be endorsed for nighttime service for fear the property sought will be disposed of or become nonexistent through sale or transfer to other persons." It is Turner's position these reasons lack specificity. He is correct.

Section 1533 provides: "Upon a showing of good cause, the magistrate may, in his discretion, insert a direction in a search warrant that it may be served at any time of the day or night. In the absence of such a direction, the warrant shall be served only between the hours of 7 o'clock a.m. and 10 o'clock p.m."

This court has held a search invalid where the only statements in the affidavit supporting the need for service at nighttime was the fact the defendant worked during the day and was not always home until late at night. The defendant in that case was alleged to be in possession of marijuana. A controlled sale had taken place and marijuana was seen in the defendant's home. It was not alleged, however, that the sale took place at night. (*People v. Watson* (1977) 75 Cal.App.3d 592, 595 [142 Cal.Rptr. 245].)

■ Our analysis began with some fundamental principles and rules of law in this area: "[A] search of a person's home is a drastic intrusion upon the personal rights of the homeowner. For this reason, statutes regulating the use of search warrants are to be liberally construed in favor of the individual. [Citation.] Thus, a daytime service of a search warrant is preferred to night service, and where a statute authorizes night service when certain requirements are met, the warrant must conform to the statutory requirements in every material detail. [Citations.]" (*Id.*, at p. 595.)

■ The standard for "good cause" as it is used in section 1533 was set forth as follows: "We conclude that the proper standard for 'good cause' as specified in Penal Code section 1533 is as follows: the affidavit furnished the magistrate must set forth specific facts which show a necessity for service of the warrant at night rather than between the hours of 7 a.m. and 10 p.m. This means that the magistrate must be informed of facts from which it reasonably may be concluded that the contraband to be seized will not be in the place to be searched during the hours of 7 a.m. to 10 p.m." (*Id.*, at p. 598.)

We expressed the opinion that the magistrate's exercise of discretion in authorizing nighttime service could not be based solely upon the nature of

the contraband seized or the type of crime involved. (*Id.*, at p. 597.) Our holding was based upon federal constitutional standards. (*Id.*, at p. 597.)

In *Tuttle* v. *Superior Court* (1981) 120 Cal.App.3d 320 [174 Cal.Rptr. 576], we were again faced with the question of the validity of a nighttime search. The affidavit in *Tuttle* was insufficient to warrant issuance during the nighttime. As in *Watson,* law enforcement officials were after marijuana. They believed a substantial amount of the drug was being cultivated on land belonging to the defendant, and that the defendant had been seen with weapons on the property. Information about the weapons, however, was not established by a reliable source. The affidavit stated as follows: " 'Your affiant is aware that the cultivation of marijuana takes place in the day or night hours and that based on your affiant's nine (9) years in narcotic enforcement that drug distributors often utilize the cover of darkness to conceal their transportation and handling of contraband. Your affiant is also aware that instances of escape and carrying of firearms are becoming more common in the service of search warrants on remote cultivation sites in California. For the above reasons, your affiant requests authorization for service at any time of the day or night which would facilitate the service of the warrant early in the morning hours while residents are still sleeping.' " (*Id.*, at pp. 325-326.)

We found that no facts were alleged which would reasonably lead the magistrate to believe the contraband, a substantial amount of cultivated marijuana, would not still be on the premises during the daytime hours as defined by the statute. (*Id.*, at p. 328.) We also held that suppression of evidence appeared to be the appropriate remedy for a search violative of the conditions created by the section. (*Id.*, at p. 332.) We were of the opinion exclusion was constitutionally compelled. (*Id.*, at p. 330.) In both *Watson* and *Tuttle,* our opinions were based upon the Fourth Amendment. (*Watson, supra,* 75 Cal.App.3d at p. 597; *Tuttle, supra,* 120 Cal.App.3d at pp. 331-332 and fn. 9.)

Again as in *Watson,* we expressed in *Tuttle* the opinion that our reasoning was based upon the protections provided by the Fourth Amendment. Recognizing a contrary holding in another district, we reiterated our position that section 1533 has a constitutional base in California. In so doing, we disagreed with *People* v. *Glass* (1976) 56 Cal.App.3d 368, 372 [128 Cal.Rptr. 413], in which the court held section 1533 is not constitutionally based.

The Attorney General does not hide his disagreement with the *Watson* and *Tuttle* opinions, and in essence urges this court not to follow them. We decline the invitation to retreat from our position in *Watson* and *Tuttle.*

Instead, we find the search constitutionally valid under *Watson* and *Tuttle* and, alternatively, valid under application of the "good faith exception" recently enunciated by the United States Supreme Court. (See *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].)

■ While, as noted, Turner is correct when arguing the reasons which Hardin specifically stated as justifying a nighttime search lack the specificity required by *Tuttle* and *Watson,* those cases are not to be read as meaning the magistrate, in deciding if a nighttime search is justified, must rely solely upon the facts the affiant expressly articulates as being those which justify a nighttime service. Instead, the magistrate reviews the entire affidavit, as well as any other evidence properly before him, in determining whether sufficient specific facts exist which reveal a necessity for nighttime service. (See *Watson, supra,* 75 Cal.3d at p. 598.)

In the present case, the affidavit had incorporated in it crime reports of the Tulare County sheriff's office. These reports, running for some 12 pages, give detailed descriptions of the dozens of items reportedly taken from the Lauritzen home, the value of which was in excess of $18,000. Many of the items were small and readily concealed or transferred: jewelry (diamond ring and two diamond engagement bands), coin collection, wrist watches, silver service (approximately 23 pieces), pocket knife, rifle, credit cards, and a leather liquor carrying case containing three bottles of liquor. The informant indicated that the liquor carrying case, when he saw it at the Turner home, contained only one liquor bottle. From this fact the magistrate could infer the other two had already been disposed of by Turner. Furthermore, nearly 10 days had elapsed between the time of the robbery and the day on which Hardin submitted his affidavit. The affidavit disclosed that four persons, including Turner, committed the robbery, all of whom, it appeared, had continuing access to the property. The magistrate could therefore have reasonably believed time was of the essence. The present case is therefore readily distinguishable from *Tuttle* and *Watson.*

A magistrate's finding of good cause for issuance of a warrant authorizing nighttime service will not be disturbed on appeal absent an abuse of discretion. (*People* v. *Cletcher* (1982) 132 Cal.App.3d 878, 882 [183 Cal.Rptr. 480].) Under these facts, we find no such abuse occurred. The magistrate could reasonably believe the contraband from the robbery would not still be at Turner's residence during the daytime hours defined in the statute. (*Tuttle, supra,* 120 Cal.App.3d at p. 328.)

■ Alternatively, we find that even if the search was invalid under *Watson* and *Tuttle,* suppression of the evidence is no longer mandated by the Fourth Amendment, as it was at the time those opinions were written.

In *United States* v. *Leon, supra,* 468 U.S. 897, the police were found to have acted in a reasonable reliance on a facially valid search warrant issued by a magistrate who was both neutral and detached. The warrant was later found to be defective because it was unsupported by probable cause. (*Id.,* at p. 900 [82 L.Ed.2d at pp. 684, 685, 687, 104 S.Ct. at pp. 3409, 3410, 3412].) Rather than suppressing evidence which was the fruit of the search authorized by the defective warrant, the court modified the Fourth Amendment exclusionary rule by recognizing a "good faith exception" to the rule of exclusion of evidence illegally seized under these circumstances. (*Id.,* at p. 906 [82 L.Ed.2d at p. 687, 104 S.Ct. at p. 3412].)

Numerous courts have applied *Leon* retroactively in cases such as the present one where the case was tried, or the suppression motion was heard, prior to the *Leon* opinion being handed down. (*Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929, 941-942 [216 Cal.Rptr. 817]; *People* v. *Barbarick* (1975) 168 Cal.App.3d 731, 738 [214 Cal.Rptr. 322]; *People* v. *MacAvoy* (1984) 162 Cal.App.3d 746, 759-760 [209 Cal.Rptr. 34]; *People* v. *Helmquist* (1984) 161 Cal.App.3d 609, 616 [207 Cal.Rptr. 718].) We agree with the reasoning in those decisions. (*People* v. *Guerra* (1984) 37 Cal.3d 385 [208 Cal.Rptr. 162, 690 P.2d 635].)

*Leon* has further been applied in cases where the Attorney General relies on the decision for the first time on appeal. (*People* v. *Barbarick, supra,* 168 Cal.App.3d at p. 735, fn. 1; *People* v. *MacAvoy, supra,* 162 Cal.App.3d at p. 763; *People* v. *Helmquist, supra,* 161 Cal.App.3d at p. 618.) The only disagreement in this area has been expressed in *Higgason.* Justice Sonenshine was of the opinion the issue was only cognizable for the first time on appeal where the record was such that the reviewing court was faced only with a question of law. (*Higgason, supra,* 170 Cal.App.3d at p. 942.) The two concurring justices disagreed. Both applied *Leon* for the first time on appeal without requiring the further condition that the issue be presented merely as a question of law. (*Id.,* at pp. 952-953 and fn. 2.)

We believe the majority of cases and opinions in this area to be correct, and apply *Leon* even though it was not argued below. However, we also note that the record before us is so unlike the record before the court in *Higgason* that the good faith issue may be decided, on this record, as one which is purely a question of law.

In *Leon,* the court reiterated the position expressed in *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317], as to the two-pronged approach to Fourth Amendment problems dealing with exclusion of evidence: "Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the

question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' *Illinois* v. *Gates, supra,* 462 U.S., at 223, 103 S.Ct., at 2324." (*United States* v. *Leon, supra,* 468 U.S. at p. 906 [82 L.Ed.2d at p. 688, 104 S.Ct. at p. 3412].) The court went on to find that only the first question was before it. (*Id.,* at pp. 907-908 [82 L.Ed.2d at pp. 688-689, 104 S.Ct. at pp. 3412-3413].)

In answering that question, the court went through the policy reasons for excluding evidence in Fourth Amendment cases and concluded that in instances such as those presented by the case before it, exclusion would not generally be required:

"We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion. We do not suggest, however, that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms. '[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' *Illinois* v. *Gates,* 462 U.S., at 267, 103 S.Ct. at 2347 (WHITE, J., concurring in the judgment), for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' *United States* v. *Ross,* 456 U.S. 798, 823, n. 32, 102 S.Ct. 2157, 2172, n. 32, 72 L.Ed.2d 572 (1982). Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, cf. *Harlow* v. *Fitzgerald,* 457 U.S. 800, 815-819, 102 S.Ct. 2727, 2737-2739, 73 L.Ed.2d 396 (1982), and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

"Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks* v. *Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc.* v. *New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' *Brown* v. *Illinois,* 422 U.S., at 610-611, 95 S.Ct., at 2265-2266 (POWELL, J., concurring in part); see *Illinois* v. *Gates, supra,* 462 U.S., at 213, 103 S.Ct., at 2317 (WHITE, J., concur-

ring in the judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Cf. *Massachusetts* v. *Sheppard*, 468 U.S., at 981, 82 L.Ed.2d, at 737, 104 S.Ct., at 3424." (*Id.*, at p. 924 [82 L.Ed.2d at pp. 698-699, 104 S.Ct. at pp. 3421-3422], fns. omitted.)

The court then held that: "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." (*Id.*, at p. — [82 L.Ed.2d at pp. 700-701, 104 S.Ct. at p. 3423].)

As the earlier discussions have indicated, none of the factors warranting exclusion under *Leon* are present in the instant case.

Further, *Leon* has been applied to a case in which the sufficiency of probable cause was not the issue on which the search was challenged. (*People* v. *Barbarick, supra,* 168 Cal.App.3d 731.) No warrant was involved in *Barbarick.*

In *Barbarick,* the officer relied, not on a warrant, but upon a facially valid search condition imposed upon the defendant's "own recognizance" release while he was pending appeal. (*Id.*, at pp. 733-739.) The search condition was later found to be invalid (*id.*, at pp. 735-737), but the evidence resulting from the search was not suppressed. Instead, the court applied the *Leon* analysis to the situation where a magistrate or judge makes an invalid search condition (as opposed to a warrant) upon which the police officer reasonably relies when carrying out a search. (*Id.*, at p. 739.)

We further note that the good faith exception was also applied by the Supreme Court in a companion case to *Leon.* (*Massachusetts* v. *Sheppard* (1984) 468 U.S. 981 [82 L.Ed.2d 737, 104 S.Ct. 3424].) *Sheppard* is helpful because it once more illustrates the court's reasoning in application of the standard to be applied in these instances.

In *Sheppard,* the court again described the test by which a reviewing court measures the officer's conduct and behavior (to determine whether the officer acted in good faith when relying upon the warrant) as being an objective test. (*Id.*, at p. 987 [82 L.Ed.2d at p. 743, 104 S.Ct. at p. 3428]; see also *United States* v. *Leon, supra,* 468 U.S. at pp. 919-920, fn. 20 [82 L.Ed.2d at p. 696, 104 S.Ct. at p. 3420].)

As in *Sheppard,* no dispute exists that Hardin believed the warrant authorized the search he conducted. Also as in *Sheppard,* the only remaining question "is whether there was an objectively reasonable basis for the officers' mistaken belief." *(Massachusetts* v. *Sheppard, supra,* 468 U.S. at p. 988 [82 L.Ed.2d at p. 744, 104 S.Ct. at pp. 3428-3429].)

Hardin testified extensively about statements, alleged misstatements, and omissions in his affidavit. We have already established that he did not intentionally mislead the magistrate when making the affidavit. His good faith in this case has been established throughout. In fact, it was never alleged that Hardin and the other officers acted in bad faith in serving the warrant during the nighttime once the magistrate had authorized it: the challenge was only to whether the warrant should have been issued in the first place, and if so, whether nighttime service was justified. Certainly the defendants' inquiry, in the record below, considered Hardin's good or bad faith. Had they truly believed that Hardin acted in bad faith when relying upon the warrant and serving it during the nighttime, they would have pursued that avenue when attacking the search warrant below.

As a result, under these facts, when the magistrate signed the warrant, a reasonable police officer would have concluded, as did Hardin, that the warrant authorized a search during the nighttime. This is all that is required. *(Id.,* at p. 989 [82 L.Ed.2d at p. 744, 104 S.Ct. at p. 3429].)

The court was therefore correct in denying Turner's motion to suppress the evidence derived from the search of his residence.

III. SUPPRESSION MOTIONS OF RENTERIA, HINOJOS, AND LOPEZ

The court found Hinojos had no standing and therefore denied his motion. The court found *People* v. *Martin* (1955) 45 Cal.2d 755 [290 P.2d 855], which established California's vicarious standing rule, was no longer applicable after passage of Prop. 8. The court was correct. *(In re Lance W., supra,* 37 Cal.3d at pp. 896, 881-883.)

As for defendants Renteria and Lopez, who joined in Turner's motion, their motions were denied without comment. The question of whether, under federal standards or post-Prop. 8 state standards, either of these defendants asserted a sufficient expectation of privacy in the Turner residence to allow a challenge to it being searched need not be reached at this time. Nor need we reach the question of whether the Attorney General may argue for the first time on appeal that the defendants may not challenge the search vicariously. Instead, we will presume for purposes of argument (and to the benefit of Renteria and Lopez) that they adequately made their record below

and that they each had a sufficient expectation of privacy in the residence to warrant challenging the search.

Having concluded the court was correct in denying Turner's motion to suppress, we utilize this same analysis to conclude the court was correct in denying the motions of Renteria and Lopez who objected to the search on the same grounds as Turner.

The judgments are affirmed.

Franson, Acting P. J., and Martin, J., concurred.

A petition for a rehearing was denied November 6, 1985, and the petition of appellant Turner for review by the Supreme Court was denied January 16, 1985. Bird, C.J., Mosk, J., and Reynoso, J., were of the opinion that the petition should be granted.